Commonwealth *v.* Nolan's Estate.

Argued April 20, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*E. Russell Shockley,* Deputy Attorney General, with him *R. Paul Lessy* and *Claude T. Reno,* Attorney General, for appellant.

*Harrold R. Gill,* with him *Edw. D. McLaughlin,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 11, 1942:

This appeal is from a decree of the Orphans' Court of Delaware County setting aside the transfer inheritance tax assessed by the Commonwealth against the interest of a decedent in a joint bank account pursuant to the provisions of the Act of July 14, 1936, P. L. 44.

Margaret C. Nolan, the decedent, and Mary E. Nolan were single women and sisters residing together in the City of Chester, Delaware County. Mary E. Nolan opened a savings account in the Delaware County National Bank, at Chester, in her own name, on June 25, 1920, and the account so stood until October 29, 1937. On the latter date, the name of Margaret C. Nolan was added to the account, and at the same time a written agreement was signed by both of the sisters and lodged with the bank, as follows: "We agree and declare that all funds now, or hereafter deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common; and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by or upon order of either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives." Upon the death of Margaret C. Nolan, on November 1, 1939, a transfer inheritance tax appraisement was filed which included one-half of

the joint account. The balance on deposit in the account at that time was $9,639.51. On appeal to the orphans' court, taken by the administratrix c. t. a. of the estate of Margaret C. Nolan, the court set aside the assessment as to this item, on the ground that the agreement of October 29, 1937, was not executed with the intention of creating a joint tenancy with the right of survivorship, but for the purpose of enabling Margaret C. Nolan to draw checks on the account for and on behalf of the sister, Mary E. Nolan, who was a paralytic and had difficulty in writing her name. This appeal by the Commonwealth followed.

The Act of 1936, supra, reënacting and amending paragraph (e) of section 1 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, provides: "Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a transfer, taxable under the provisions of this act, of a fractional portion of such property, to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant." That the statute is constitutional and applies irrespective of the amounts contributed by the respective joint tenants is no longer open to question, in view of our recent decision in *Cochrane's Estate*, 342 Pa. 108. Speaking through the Chief Justice, we there stated (p. 111): "What is actually acquired by the surviving joint tenant is the right to the immediate ownership, possession and enjoyment of the whole property and it is the accrual of this right which the statute properly taxes. The interests of joint tenants are equal. They

own the half or part and the whole, per my et per tout. There is a unity of interest, title, time and possession. . . . Even where one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act made an immediate gift to the other. . . . Hence what one tenant acquires on the death of the other, where there are two joint tenants, as here, is the right to the immediate possession, ownership and enjoyment of the entire fund and not, as viewed by appellant, the contribution of the deceased joint tenant." The court below conceded, as does the appellee, that the legal effect of the terms of the written agreement was the creation of a joint tenancy with the right of survivorship in what had been previously Mary E. Nolan's individual account (*Mardis v. Steen,* 293 Pa. 13; *Reap v. Wyoming Valley Trust Co.,* 300 Pa. 156; *Haggerty's Estate,* 311 Pa. 503; *Mori's Estate,* 318 Pa. 261; *Mader v. Stemler,* 319 Pa. 374), but held that "this document must be read in the light of the surrounding circumstances", which the court thought indicated that the parties intended the written agreement to have merely the effect of a power of attorney. Accordingly, the court concluded that the bank account was not "the money of Margaret C. Nolan on the day she died" but "was the money of Mary E. Nolan until her death which occurred some three months afterwards."

The evidence of "surrounding circumstances" relied upon by the court consisted of testimony given by one Mergy, assistant cashier of the Delaware County National Bank, and Jane Nolan Apeldorn, who is the personal representative of the estate of Mary E. Nolan as well as administratrix of the estate of Margaret C. Nolan, and a niece of both decedents, all of which evidence was introduced over the Commonwealth's objection. Mergy testified that some time prior to the execution of the written agreement of October 29, 1937, Margaret C. Nolan stated to him that Mary E. Nolan, be-

cause of her physical condition, was desirous that the account be made available to checks signed by her, Margaret C. Nolan, and that he provided her with a new signature card, containing the written agreement, which was thereafter signed by both of the sisters and returned to the bank. He admitted on cross-examination, however, that Margaret C. Nolan read the agreement in his presence and that he "explained that the money would go to the survivor in case of one dying." The other witness, Mrs. Apeldorn, testified that Margaret C. Nolan "always thought she would die before Aunt Mary" and "never considered she had an interest in this account"; that "she never wanted to draw checks except for Aunt Mary"; and that withdrawals made by Margaret C. Nolan were used only "for Aunt Mary, nurses and doctors and medicine, and everything she needed." Assuming, for present purposes, that this evidence was properly admitted, we think it was clearly insufficient to defeat the Commonwealth's claim.

Whatever may have been the original intention of the parties, the fact remains that the joint tenancy agreement was fully explained to Margaret C. Nolan, at least, and that it was signed by both of the sisters, without any suggestion whatever of duress or fraud. And, while it may be that Margaret C. Nolan made no withdrawals from the account for her own purposes, that fact is not inconsistent with her status as a joint tenant under the terms of the written agreement. See *Bostrom v. Nat. Bk. of McKeesport,* 330 Pa. 65, 68. The testimony of Mrs. Apeldorn that Margaret C. Nolan "never considered she had an interest in this account" is, on its face, the mere statement of a supposititious conclusion deduced by the witness herself from the subsequent conduct of the parties, and is wholly irrelevant on the question of their actual intention at the time of the transaction. See *Zellner's Estate,* 316 Pa. 202, 206; *Culhane's Estate,* 133 Pa. Superior Ct. 339, 349. In the latter case, affirmed by this Court, 334 Pa. 124, an attempt was made to show, by

extraneous parol evidence, that a joint account had been created in lieu of a will. In deciding that the evidence relied upon was insufficient for that purpose, the court there stated as follows (pp. 351, 352) : "Whatever the secret intentions of the parties may have been, they are of no force in view of the explicit terms of the written agreement. . . . When the joint account was created in the manner to which we have heretofore referred, a present joint interest in the chose in action, with the right of survivorship, thus vested in appellant by assignment. See *Mader v. Stemler,* supra." The decision in that case amply sustains our conclusion in the present, that the decree appealed from must be reversed.

Decree reversed. Costs to be paid by appellee.