## Alden Estate

*James P. Bryan*, for estate.
*J. S. Juliante, Sr.*, for Commonwealth.

ROBERTS. P. J., January 24, 1958.—Decedent, Carolyn G. Alden (also known as Mrs. W. G. Alden) died March 29, 1956. This is an appeal by Alice Griffin, administratrix and sole beneficiary of her estate, from the assessment for transfer inheritance taxes, on two parcels of real estate in North East Township, this county. In one parcel decedent had a one-third interest, which the estate appraised at $5,000 and the Commonwealth valued at $19,506.66; in the second parcel decedent had a one-half interest, appraised by the estate at $2,000, and valued by the Commonwealth at $4,820. From statements made by counsel at the bar of the court and the stipulation entered of record, we find, as a fact, that the fair market value of decedent's interest in the first parcel is $7,000, and in the second parcel $2,000, as of March 29, 1956.

This appeal involves also the ownership of nine U. S. Savings Bonds, Series E, of the value of $1,643. The estate return lists the bonds as registered in the name of decedent, and the Commonwealth so assessed them. Petitioner claims one-half interest in the bonds, or $821.50, as her separate property. The record before us discloses that seven of the bonds, of the value of $1,588, are registered in the joint names of decedent or petitioner, the remaining two bonds of the value of $55 in the name of decedent alone. The bonds were in a bank safe deposit box to which both decedent and petitioner had access. Since both had possession of the bonds, the seven bonds registered in both names are taxable at one half their value: McGary Estate, 355 Pa. 232. The taxable value of the seven bonds is $794, and $55 for the other two bonds, or a total value of $849.

In controversy also is a savings bank account of $571.01 in the name of decedent and petitioner. The Commonwealth assessed half of the account, or $285.01,

for tax purposes; petitioner claims the entire account as her separate property. Petitioner-claimant testified, subject to objection, that her funds alone were deposited in that account. The effect of her testimony would be to diminish the total assets of the estate. Thus her interest is adverse to that of the estate and she is incompetent under the Act of 1887. We therefore exclude her testimony. The taxable result, however, so far as the joint bank account is concerned, is the same, irrespective of whether the survivor's funds made up the account. The Act of July 14, 1936, P. L. 44, sec. 2(e), 72 PS §2301(e), imposes a transfer inheritance tax upon half of the joint account, even when all funds in that joint account, in name of decedent and survivor with right of survivorship, except husband and wife, are contributed by the surviving joint tenant: Commonwealth v. Nolan's Estate, 345 Pa. 98; Appeal of Wilson, 38 Erie 176. The Commonwealth's assessment will therefore be sustained.

The estate tax return lists two blocks of General Motors common stock, registered in name of decedent; one of 93 shares, valued at $4,324.50, and the other of 231 shares, valued at $10,741.50. These shares are so assessed by the Commonwealth. Petitioner claims 138 of these shares as her sole property. The record indicates that the estate's listing is in error as to the total number of these shares; the actual number of shares of this issue registered in decedent's name is in all, 231 shares of which 93 shares are admittedly the property of decedent. To support her claim petitioner testified, subject to objection as to her competency, that the initial underlying shares, which were later split 2 for 1 and again 3 for 1, were purchased with her funds and were through error registered in the name of decedent. In the role of claimant-owner of the shares, petitioner's interest is obviously adverse to that of decedent's

estate. She claims stock registered in the name of decedent, and were she to prevail the assets of decedent's estate would be reduced to that extent; she is therefore an incompetent witness under the deadman's rule (the Act of May 23, 1887, P. L. 158, sec. 5(e)) : Monihan's Estate, 26 D. & C. 401; Conoly Estate, 7 Fiduc. Rep. 162. Accordingly, her testimony as to her ownership of the shares is inadmissible, and will be disregarded. The determination of ownership of the shares will be made as though her testimony had been initially excluded.

Petitioner offered also, in support of her claim to the sole ownership of 138 shares, declarations contained in decedent's diaries for the years 1950, 1951 and 1955, and two separate unsigned and undated notations, all in decedent's handwriting. We have carefully examined the diary notations and the other writings admitted in evidence. The cumulative effect of decedent's writings is to establish that of 231 shares registered in her name, 138 shares are the sole property of petitioner and 93 shares that of decedent. Decedent's earlier writings indicate that of 37 shares held 23 were owned by petitioner and 14 by decedent. Then, after the stock was split 2 for 1, she recorded 46 shares as being the property of petitioner and 28 shares as her own. Following a 3 for 1 split decedent's writings set forth the respective ownership of the increased number of shares. Decedent's memorandum, which appears on the reverse side of the cash dividend transmittal notice of March 9, 1956, covering these shares, lists 138 shares as belonging to petitioner and 93 as being her own. In other notations decedent apportioned the dividends between herself and petitioner on the basis of their respective stock holdings in accordance with her previously stated stock ownership interests. We find from the evidence that petitioner is the owner of 138 shares of General Motor's common stock, registered in name

of decedent. These shares then, of the value of $6,417, not being the property of decedent, will be excluded from inheritance tax appraisement.

Petitioner complains also that the Commonwealth failed to allow a credit of $110.53, representing a discount of five percent on payment of $2,100 tax, within three months after the death of decedent. Decedent died on March 29, 1956, and on June 29, 1956, petitioner delivered her check dated June 28, 1956, to the register of wills. The figures on the check appear as $2,1 00, (there being a slight extra space between the figure 1 and the first 0) and the words recite "Twenty-one hundred dollars." The check was apparently treated by the register of wills, the depository bank and petitioner's payor bank as being in the amount of $21 rather than "Twenty-one hundred dollars" in accordance with the clearly written words. On August 15, 1956, the payor bank paid to payee (register of wills) by a separate instrument, (cashier's check) $2,079, representing the difference between $2,100 and $21 paid on presentation of petitioner's check. The discount with which we are presently concerned is authorized by section 38 of the Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, as amended May 27, 1943, P. L. 757, sec. 5, 72 PS §2442, which provides: "If the tax is paid within three months after the death of the decedent, a discount of five per centum shall be allowed . . ."

We must determine whether the taxpayer in the present instance earned the discount. The statute provides that discount shall be allowed if the tax is "paid" within the specified period. The required payment is not made merely by delivery of a check by taxpayer to the register of wills and its acceptance or receipt by the register. The check does not, at the moment of delivery, complete payment of the tax obligation. It is merely a step towards payment. Delivery of the check and its

acceptance by the register is only conditional payment, subject to actual payment of the check by payor bank upon presentation. Conditional payment by check becomes absolute only upon actual payment by drawee bank or divested by nonpayment: Wedmore v. McInnes, 69 Pa. Superior Ct. 220. Payment is not accomplished until the check is honored and paid by drawee bank, and constitutes payment only to the extent that it is so paid upon presentation.

"It is elementary law that where a . . . check is received by a creditor from his debtor for an existing debt, the presumption is, in the absence of an agreement to the contrary, that it is received as conditional and not absolute payment, and the burden of proving the existence of such an agreement is upon the debtor": Diskin v. Philadelphia Police Pension Fund Association, 367 Pa. 273, 276.

On presentation of the check payor bank paid $21. This then is the amount of the conditional payment (made June 29, 1956, within the statutory period) that became absolute payment. It is therefore on this amount alone that taxpayer has established eligibility for discount. It is, of course, regretable that only $21 was paid by drawee bank when the check was presented, rather than $2,100 which was directed by the words of the check, particularly since words control figures, and sufficient funds were on deposit to pay that amount. Neither this circumstance nor error, if any, on the part of the Commonwealth's agent, authorizes this court to allow the discount. It is well established that neither error nor other conduct on the part of officers or agents of the Commonwealth deprive (or estop) the Commonwealth of its right to collect in full taxes legally due: Commonwealth v. Western Maryland Rwy. Company, 377 Pa. 312. See also Wilson Estate, 10 D. & C. 2d 569,[1] and Lehman Estate, 10 D. & C. 2d 76.[2]

It seems clear that a taxpayer to be entitled to the statutory discount must affirmatively bring himself within its provisions by full compliance with its terms. If the taxpayer, for any reason, fails to meet the requirements he is not entitled to the discount; we are without authority to relax any requirement or to extend the discount period. Nor may we accord to the delivery of the check on June 29, 1956, a conditional payment status, broad enough to include the final payment of $2,079 by drawee bank on August 15, 1956, so that it relates back to date of delivery. The wholly unreasonable lapse of approximately 45 days between delivery of check to the register, its presentation for payment in due course and the second payment by drawee bank precludes such a judicial determination. To hold otherwise would be completely contrary to long and well-established commercial practice and in direct conflict with the rules of law governing business transactions. See Wendkos v. Scranton Life Insurance Co., 340 Pa. 550; also Uniform Commercial Code of April 6, 1953, P. L. 3, Commercial Paper, 12 A PS §3-102.

We are not required to nor do we fix responsibility for the result which none of the parties desired or intended. Perhaps a taxpayer who assumes to deliver a check so very near the end of the discount period, assumes whatever risks may be involved in accomplishing absolute payment of the check within the required period.

---

[1] Claim of Commonwealth was allowed for deficiency in inheritance tax caused by register's error in computing tax on correct appraisal, three years after incorrect amount billed by register was paid by administrator, and balance distributed to heirs and fiduciary discharged.

[2] Register submitted erroneous inheritance tax appraisal on which tax was paid and receipt issued for payment in full; fiduciary's account was later confirmed and distribution made. Commonwealth's claim for balance of tax due not barred.