## Burns Estate

*Irvin Stander*, for Commonwealth.

*Joseph P. Gaffney*, for appellant.

LEFEVER, J., March 7, 1961.—Decedent died on December 6, 1959. By adjudication, dated September 19, 1960, the accounting of his testamentary assets was confirmed.

The Commonwealth has assessed inheritance tax on two extra-testamentary items, namely, a one-half interest in 54 shares of full-paid stock of the State Capitol Savings and Loan Association of Harrisburg registered "Miss Helen Burns or Rev. Leo D. Burns,

Joint tenants with right of survivorship and not as tenants in common . . .," valued at $2,740.50, and a one-half interest in savings account no. 6385 in the Pennsylvania Bank and Trust Company of Pottsville, registered "Helen B. Burns and Leo D. Burns," valued at $1,498.34. These items were taxed at 15 percent.

An appeal from this assessment was filed and a hearing thereon has been held.

Decedent was a brother of Helen B. Burns. Helen owned 59 shares of State Capitol Savings and Loan Association of Harrisburg and had a savings account in the Pennsylvania National Bank and Trust Company of Pottsville. Under date of September 10, 1956, Helen directed the Pennsylvania National Bank and Trust Company of Pottsville to transfer her savings account into the joint names of herself and her brother. To this end, Helen and decedent signed an agreement which provided, inter alia:

"We agree and declare that all funds now or hereafter deposited in this account are, and shall be, our joint property and owned by us as joint tenants with right of survivorship and not as tenants in common; and upon the death of either of us any balance in the said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by or upon the order of either of us or the survivor."

Under date of October 14, 1956, Helen directed the State Capitol Savings and Loan Association of Harrisburg to transfer to herself and her brother, as joint tenants with right of survivorship and not as tenants in common, the 59 shares which she owned in that association. To that end, they both signed and sealed the printed assignments, endorsed on the back of certificates of the association issued in her name, numbers 127575, 122125 and 138848 for 46, 10 and 3 shares, respectively, which provided, inter alia:

"And now, this 14th day of Oct. 1956, I (we) hereby, for value received, assign, transfer and set over all my (our) right, title and interest in and to 46 Full Paid Shares of Certificate No. 127575 in the State Capitol Savings and Loan Association of Harrisburg, Pennsylvania, to Miss Helen Burns or Rev. Leo D. Burns as joint tenants with right of survivorship and not as tenants in common and not as tenants by the entireties; and the said assignees of said shares, hereinafter called joint tenants, hereby agree and direct that any one or more of the signatures of the joint tenants or of the survivor or survivors shall authorize the said Association to act at any time in any manner in connection with the said shares, including the payment of all or any portion of the present or future participation or withdrawal value of or of any dividend, profits, interest or other monies now or hereafter relating to said shares to any one or more survivors, without any liability for such payment, and agree with each other and with the said Association that any and all monies paid now or hereafter by any one or more of said joint tenants to the credit of any or all of said shares shall be a gift at that time of such monies to the other joint tenant(s) to the extent of his or their pro rata interest in said shares and that such payments and any and all dividends, profits, interest or other monies now or hereafter credited to any or all of said shares, or to the holders thereof, shall likewise be the joint property of and be owned by them or the survivors as joint tenants with the right of survivorship, or by the last survivor absolutely, and agree that said Association may, at its option, make any and all payments in connection with the foregoing by check payable to the said joint tenants, or the survivors, in the alternative and deliver any such check to any said joint tenants, and agree to abide by the Articles of Incorporation and the By-

Laws, rules and regulations of the said Association."

Thereafter, a certificate for 59 full-paid shares of stock of the State Capitol Savings and Loan Association of Harrisburg was issued in the names of "Miss Helen Burns or Rev. Leo D. Burns, Joint tenants with right of survivorship and not as tenants in common and not as tenants by the entirety." Thereafter, five shares of the stock was sold. Decedent and Helen both signed the necessary endorsement on the stock certificate. At decedent's death, 54 shares remained in their joint names.

Mrs. Rose Harris, niece of decedent, and Helen B. Burns testified that Helen at all times retained possession of the certificates for the building and loan shares and the book for the savings account; that the dividends on the building and loan shares were paid to Helen; and that no withdrawals from the savings account were made for decedent's benefit. The niece was not certain that the checks covering dividends on the building and loan shares were drawn to the joint order of decedent and Helen and that decedent endorsed such checks. Her testimony was heard over the objections of the Commonwealth that (1) she was incompetent to testify under the "Dead Man's Act of 1887," since she was a primary beneficiary of Helen's estate, and (2) this testimony violated the Parol Evidence Rule. There is real doubt as to whether the niece's testimony was admissible. However, even if this evidence were admissible, it was not sufficient to vary the express terms of the two written contracts executed by decedent and Helen.

There is no need to repeat what this court recently stated in Cox Estate, 23 D. & C. 2d 390, handed down December 16, 1960. In short, we followed the decisions of the Supreme Court in Amour Estate, 397 Pa. 262, and Furjanick Estate, 375 Pa. 484, where it was held that a written contract creating a joint tenancy with

right of survivorship in a bank account constitutes the requisite elements of intention and delivery to form a completed gift. These cases are on point with the facts in the instant case. Accordingly, the hearing judge rules that a valid gift inter vivos of a joint tenancy was effectuated with regard to the bank account.

In Parkhurst Estate, 402 Pa. 527, the Supreme Court ruled that registration on the books of the corporation of a stock certificate in the names of decedent and donee is strong evidence of a gift inter vivos and that only slight additional evidence is necessary to prove the gift. In the instant case, decedent and Helen Burns signed a written assignment creating a joint tenancy. This contract on its face is unequivocal that a joint tenancy with right of survivorship was created. Moreover, decedent endorsed the stock certificate when five shares were withdrawn and sold. The evidence offered to the contrary is insufficient to destroy the express words of the contract. No evidence of fraud, accident or mistake has been produced. Therefore, the parties are bound by this contract. It is clear. Accordingly, the hearing judge rules that there was a valid gift of a joint tenancy with right of survivorship in the stock certificates.

The Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, expressly makes a joint tenancy taxable to the extent of one-half of the value thereof. The Supreme Court has recognized that even though the decedent contributed all of the money deposited in the bank account or all of the purchase price of stock, one half of the bank account and one half of the value of the shares of stock are taxable: Commonwealth v. Nolan's Estate, 345 Pa. 98. There the court stated, at page 100, et seq.,:

"The Act of 1936, supra, reenacting and amending paragraph (e) of section 1 of the Transfer Inheri-

tance Tax of June 20, 1919, P. L. 521, provides: 'Whenever any property, real or personal, is held in the joint names of two or more persons, except as tenants by the entirety, or is deposited in banks or other institutions or depositories in the joint names of two or more persons, except as husband and wife, so that upon the death of one of them the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a transfer, taxable under the provisions of this act, of a fractional portion of such property, to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant.' That the statute is constitutional and applies irrespective of the amounts contributed by the respective joint tenants is no longer open to question, in view of our recent decision in *Cochrane's Estate*, 342 Pa. 108. Speaking through the Chief Justice, we there stated (p. 111) : 'What is actually acquired by the surviving joint tenant is the right to the immediate ownership, possession and enjoyment of the whole property and it is the accrual of this right which the statute properly taxes. The interests of joint tenants are equal. They own the half or part and the whole, per my et per tout. There is a unity of interest, title, time and possession. . . . Even where one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act made an immediate gift to the other. . . . Hence what one tenant acquires on the death of the other, where there are two joint tenants, as here, is the right to the immediate possession, ownership and enjoyment of the entire fund and not, as viewed by appellant, the contribution of the deceased joint tenant.' "

In law, as in everyday affairs, it is a truism "You can't have both the penny and the cake." Helen B. Burns wished to give her brother, decedent, the rights and privileges of a joint tenancy with right of survivorship in the savings account and in the building and loan shares. This would have saved him inheritance tax, in respect of an assessment on only one half of the property, if she had died first. However, she survived decedent, but she subsequently died on February 1, 1960. Since her brother's death gave rise to the appraisement and assessment of tax on his estate, and he did not provide a "tax-free" clause in his will as to extra-testamentary property, it follows that neither Helen nor her estate can escape the burden and liability of payment of the appropriate taxes as initially ensued at the brother's death: Cochrane's Estate, 342 Pa. 108, 112. This rule may seem harsh in this case, because of Helen's early death after her brother's, and the probability that the property, of which she was the owner as a surviving joint tenant and which had all been contributed by her, would again be taxed in her estate.

Helen and decedent, by their written instruments, completed the ownership of the property as joint tenants with right of survivorship, and in the absence of any competent, clear and indubitable evidence of fraud, accident or mistake in the establishment of the ownership of the property in accordance with such written instruments, it follows that the Commonwealth's assessment of tax as made in the instant estate was valid and proper.

And now, to wit, March 7, 1961, the appeal is dismissed, the assessment of tax confirmed, and the record is remitted to the register.