**Slifer Estate**

*John J. Cahill, Jr.*, for appellant.
*Charles F. Nahill*, for appellee.

SHOYER, J., November 4, 1964.—Appellant objects to the assessment of collateral inheritance tax because of the inclusion in the appraisement by the Commonwealth of the sum of $4,200, being one-half of the paper currency, not earmarked, but found in the safe deposit box rented by decedent and his surviving sister.

George Slifer, decedent, died April 28, 1963, intestate, and letters of administration upon his estate were granted by the Register of Wills to John J. Cahill, nominee of Florence S. Goslin, decedent's sister and his only heir-at-law.

The account by the personal representative is being audited and adjudicated by me contemporaneously herewith. His account does not list as an asset the currency found in decedent's safe deposit box, nor has the personal representative made any claim thereto.

The inheritance tax appraisement, to which is attached the affidavits by the personal representative on Commonwealth's forms listing the assets and statement of debts and deductions, was offered in evidence on behalf of the Commonwealth. The only asset listed by the personal representative is the sum of $804.17 in decedent's savings account at Central-Penn National Bank, and for information purposes it is stated that Mrs. Florence S. Goslin, sister of decedent, and the decedent rented a safe deposit box at the Mayfair branch of the First Pennsylvania Banking and Trust Company which, at the time of decedent's death, contained an unmarked envelope in which there was found 84 $100 bills, 1934 series, which, it is claimed, was the sole property of Florence S. Goslin. The inheritance tax appraiser included $4,200, one-half of this currency, as a taxable asset.

The tax was imposed under section 241 of the Inheritance and Estate Tax Act of 1961, P. L. 373, 72 PS §2485-241, which provides:

"JOINT TENANCY.—When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant. This section shall not apply to property and interests in property passing by right of survivorship to the survivor of husband and wife. If the co-ownership was created in contemplation of death, within the meaning of section 222 of this act, the entire interest so transferred shall be subject to tax only under section 222, as though a part of the estate of the person who created the co-ownership."

The comment to this section states that the provision is suggested by Act of 1929, P. L. 1795, sec. 1, as amended by Act of 1936, First Ex. Sess., P. L. 44, sec. 2, and Act of 1949, P. L. 1083, sec. 1. See Nolan's Estate, 345 Pa. 98 (1942); In re Cochrane's Estate, 342 Pa. 108 (1941).

At the hearing before me, counsel for the Commonwealth agreed that the copy of the safe deposit box lease agreement be admitted into evidence. This agreement, dated October 14, 1959, and signed by Florence S. Goslin and C. George Slifer, decedent, for rental of box no. 14 at The First Pennsylvania Banking and Trust Company, provides:

"Access to this safe deposit box is to be permitted to both or either of the undersigned, and in case of death of either such permission shall continue in the survivor as fully as if this safe deposit box has been in the sole name of such survivor, and the undersigned, for themselves, their executors and administrators, hereby release The First Pennsylvania Banking and Trust Company from all liability in permitting access to the same and removal of the contents by such survivor."

The bank's record of entry to the safe deposit box, attached to the record on appeal, shows that between January 22, 1962, and decedent's death there were seven entries to the box, six of which were by decedent.

The lease agreement, in that it fails to describe the parties as joint tenants, or joint owners with right of survivorship, is similar to the one involved in Tomayko v. Carson, 368 Pa. 379 (1951). The Supreme Court there noted, page 385: "The fact that decedent and claimant had joint access to the safe deposit box is not evidence of a completed gift to the latter. A joint lease of a safe deposit box is not of itself sufficient to establish joint ownership of securities found therein which originally belonged to one of the lessees: Wohleber's Estate, 320 Pa. 83."

The lease agreement here is, on its face, readily distinguishable from the lease agreement involved in King Estate, 387 Pa. 119 (1956), which provided: "10 . . . J.C. In case the lessees are joint tenants, including husband and wife, it is hereby declared that all property of every kind at any time heretofore or hereafter placed in said box is the joint property of both lessees and, upon the death of either, passes to the survivor." See also Secary Estate, 407 Pa. 162 (1962); cf. Chadrow, Exec. v. Kellman, 378 Pa. 237 (1954).

Florence S. Goslin, subject to objection by counsel for the Commonwealth as to her competency, testified that after her husband's death in 1954, she transferred her

safe deposit box from a bank in town to the Mayfair branch of The First Pennsylvania Banking and Trust Company, a few blocks from her home, in her name alone, and in 1959, because she could not go to the box herself, she provided for access by her brother; she retained both keys to the box; her brother never placed in it any of his belongings, and whenever she needed anything out of the box she would give decedent the key to enter; that the $8,400 in the box was all her own money which she formerly kept in her safe deposit box in town; that from January 1962 for two months she was in the Frankford Hospital and then she was at the Boulevard Nursing Home for several months, recovering from injuries which resulted from a fall; that at the time of her brother's death the box contained her stock certificates, her cemetery lot deed and the envelope with her paper currency.

John J. Cahill, the accountant, a member of the bar of this court, testified that he knew decedent for many years and also knew Mrs. Goslin, and represented her husband's estate; that in 1954, Mrs. Goslin inherited her husband's substantial estate, and he advised her to move her safe deposit box to a bank closer to her home and to name decedent as her deputy. He testified that when the box was entered for the first time after decedent's death, it contained 16 stock certificates, several savings account books, savings bonds, each certificate, book and bond registered in Mrs. Goslin's name alone, the deed to her cemetery lot, a copy of her will and this envelope, without markings, containing 84 $100 bills, all series 1934.

The Commonwealth's objection to Mrs. Goslin's testimony was based on the Dead Man's Act, the Act of May 23, 1887, P. L. 158, sec. 5(e), 28 PS §322. This section of the act provides that if a party to a thing or contract has died and his right has passed to a party on the record who represents his interest, any witness

with an adverse interest is disqualified from testifying as to anything occurring before the death unless he falls within one of the exceptions enumerated in the act.

Since the contents of the safe deposit box were neither inventoried by, nor claimed for decedent's estate, the witnesses here could not be said to be claimants against his estate nor was their testimony adverse to the rights of decedent. Under the act, it is adverse interest which disqualifies, not adverse testimony. See McGary Estate, 355 Pa. 232, 236, and Hollinger Estate, 29 D. & C. 2d 602, 13 Fiduc. Rep. 331 (1963), and the cases there discussed. Hosfeld Estate, 414 Pa. 602 (1964), cited on behalf of the Commonwealth, is here inapposite. In Hosfeld the surviving party to the transaction was a claimant against decedent's estate. As such, his testimony was clearly inadmissible. I am convinced that in the circumstances here Mrs. Goslin was a competent witness. The mere fact that as decedent's sole heir-at-law she would by descent receive his entire estate including the disputed $8,400, even though she did not claim the cash as original owner, cannot impair her competency. There exists a vital distinction from Loeffler's Estate, 2 D. & C. 388, which was decided by this court in 1922. There the widow claimant was also the administratrix c. t. a. Judge Henderson, who heard the tax appeal in that estate, ruled her incompetent and significantly stated, page 389: "The fact that she, as administratrix c.t.a., agrees with herself individually that the claim is not adverse, does not make it so. . . ." For the above reasons I rule that Mrs. Goslin, the joint lessee, was competent to testify at the hearing on this tax appeal.

Her credibility, of course, is another matter. Although she was called to testify ahead of Mr. Cahill, the administrator, her testimony may be appraised as merely corroborative of his. He knew well the extent

of decedent's resources and his modest finances. Mr. Slifer had only a government pension and after the death of Mr. Goslin, a real estate broker who had employed decedent part time, he asked Mr. Cahill to continue to provide him with some part-time work: "He said he wanted to make a little additional income, because he found it a little hard getting along on his pension." Over the years this witness had acquired accurate and reliable information as to the joint lessees' respective assets. Mr. Cahill is a reputable, highly regarded member of the bar of this court. His credibility is unquestioned. On this record there can be no doubt that the $8,400 was originally the sole property of Mrs. Goslin.

In argument before the court, the Commonwealth contended that the language of section 241 was broad enough to cover the wording of the instant lease agreement. Superficially, this may be so. If we consider the historical background of this present revenue act, however, we must conclude that the legislature intended no change in its tax impact. Such changes as occurred in the phraseology were stylistic only, not in the substance. See the above-noted comment of the Joint State Government Commission, also Grossman and Smith, Penna. Inheritance and Estate Tax (1961), sec. 241-2, p. 139.

After the failure of earlier attempts by the legislature to tax joint estates (see Haggerty's Estate, 311 Pa. 503), the amendment of 1936 imposed the tax expressly upon the "accrual" of the "right to the immediate ownership or possession and enjoyment of the whole property." In upholding the validity of this amendment, Judge, later Mr. Justice, Ladner of this court clearly and succinctly stated in Stone's Estate, 35 D. & C. 615, 619:

"By the amendment of 1936 the legislature now taxes not a passage of title, but the right which *accrues*

to the surviving tenant at the death of the other joint tenant, to *exclusively* dispose of the balance then remaining in the account. True the legislature does it by defining such accrual to be a transfer, but that does not make it less effective." In Kelly's Estate, 336 Pa. 305, Cochrane's Estate, 342 Pa. 108, and Commonwealth v. Nolan's Estate, 345 Pa. 98, our Supreme Court subsequently adhered to Judge Ladner's view.

Here the language of the lease neither touched nor affected the ownership of the box's contents in any way. The very same title which Mrs. Goslin had originally, she retained after the death of her joint lessee. There was no "transfer" of property at his death, and no "passage of ownership of any property, or any interest therein" as defined in section 102(22) of the act. Any doubt as to taxability is removed by section 312 which provides: "Property held in the name of decedent who had no beneficial interest therein is exempt from inheritance tax."

It is true that section 241 has dropped the adjective "joint" from before the noun "names" in its first two clauses, but I am not impressed with the Commonwealth's argument that anything less substantial than *joint ownership* is embraced by the current language. It is not enough that the safe deposit box be leased in two or more names, but *joint ownership of the contents* must be established by the language of the lease agreement or by other convincing evidence. While the Commonwealth expressed its fear of the tax avoidance that might result from Mrs. Goslin's prior death, that is not a hypothesis on which I am free to decide the present issue. Furthermore, the safeguards of article XI, prohibiting entry to a box after death without a representative of the Commonwealth being present, insure knowledge of all such situations coming to the attention of the state's revenue agents. The prohibition of unaccompanied entry pertains to any safe deposit box

"in the name of decedent alone or in the names of the decedent and another or others": Section 1101. The restriction pertaining to husband and wife was removed by the amendment of April 23, 1963, P. L. 21.

The evidence establishes, and I find as a fact, that Florence S. Goslin was the source of the several items of property found in the safe deposit box, specifically the $8,400 in paper currency sought to be taxed. Further, there is not a scintilla of evidence to show that Mrs. Goslin made any transfer of ownership of this currency to decedent which would subject it to the tax under the quoted section of the taxing statute, anymore than the bank accounts, stocks and bonds found in the box which the Commonwealth conceded were not includible in decedent's taxable estate.

Accordingly, the appeal from the assessment of the tax is sustained, and the record is remitted to the Register of Wills.