## Olson Estate.

Argued March 13, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

484

*Vincent Dopko,* Deputy Attorney General, for Commonwealth, appellant.

No oral argument was made nor brief submitted for appellee.

OPINION BY MR. JUSTICE ROBERTS, May 25, 1972:

William H. Olson died testate on February 17, 1971. His widow and executrix, Fern Weaver Olson, filed an inheritance tax return.[1] Neither the inventory nor the filed return listed any interest of decedent in two joint savings accounts in the Northwest Savings and Loan Association. These accounts with the right of survivorship were in the names of decedent and his brother Paul H. Olson.[2]

---

[1] Act of June 15, 1961, P. L. 373, art. I, §101 et seq., 72 P.S. §2485-101 et seq.

[2] Signature cards were signed by both decedent and Paul H. Olson upon the creation of the joint savings accounts. The cards contained the following provisions:

"OLSON, Paul H.
and William H.
as *joint tenants with right of survivorship* and not as tenants in common, and not as tenants by the entirety, the undersigned hereby apply for a savings account in

NORTHWEST SAVINGS AND LOAN ASSOCIATION

and for the issuance of evidence thereof in their joint names described as aforesaid. . . . It is agreed by the signatory parties with each other and by the parties with you that any funds placed in or added to the account by

The Commonwealth filed its tax appraisal and included assessments of both joint accounts.[3] Decedent's executrix appealed from the assessment. A hearing was held before the Orphans' Court Division of the Court of Common Pleas of McKean County. The court concluded that "these joint bank accounts were created by reason of accident and mistake induced by the Savings institutions themselves . . ."[4] and were not sub-

---

any one of the parties are and shall be conclusively intended to be a gift and delivery at that time of such funds to the other signatory party or parties to the extent of his or their pro rata interest in the account." (Emphasis added.)

One account contained $520.80 while the other contained $8,114.54 at decedent's death.

[3] The Commonwealth originally assessed the full value of both accounts presumably on the theory that the accounts were created less than two years before decedent's death and were fully taxable as gifts in contemplation of death. Act of June 15, 1961, P. L. 373, art. II, §222, 72 P.S. §2485-222. The Commonwealth reduced the assessment on one of the accounts to half-value after discovering that it was created more than two years before decedent's death, and subject only to the tax on joint tenancies. Id. §241, 72 P.S. §2485-241. The Commonwealth now concedes on appeal that since the survivor Paul H. Olson was the only contributor to the accounts, there is no basis for taxing the account created within two years of decedent's death at full value as a gift in contemplation of death.

[4] The trial court also concluded that the "evidence presented was sufficiently clear, precise and convincing to overcome the prima facie inter vivos gifts alleged by the Commonwealth." In so concluding, the trial court incorrectly assumed that liability for the inheritance tax was to be resolved by the legal principles governing ownership of joint tenancy interests.

Some courts have been applying ownership principles to determine the applicability of Section 241 of the Inheritance Tax Act. See, e.g., *Nichelson Estate*, 16 Fiduc. Rep. 345, 346-47 (O.C. Westmoreland County 1966); *Kivlin Estate*, 13 Fiduc. Rep. 408, 413 (O.C. Lackawanna County 1963); *Vought Estate*, 44 Erie County L.J. 86, 87-88 (O.C. Erie County 1961). The express statutory language

ject to tax. The Commonwealth appealed.[5] Our review of the record satisfies us that the decree must be reversed.

Section 241 of the Inheritance Tax Act imposes a tax on joint tenancy interests as follows: *"When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons,* so that, upon the death of one of them, *the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property,* the accrual of such right, upon the death of one of them, *shall be deemed a transfer subject to tax* under this Act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant." Act of June 15, 1961, P. L. 373, art. II, §241, 72 P.S. §2485-241 (emphasis added).

Section 241 in clear and specific language imposes a tax upon a joint account with a right of survivorship, upon the death of one of the joint tenants. The enhanced "right to the immediate ownership or possession and enjoyment of the whole property"[6] thus accruing to the survivor is deemed a statutory transfer subject to tax.

In *Cochrane's Estate,* 342 Pa. 108, 20 A. 2d 305 (1941), where we sustained the constitutionality of the practically identical predecessor of Section 241, we observed: "What is actually acquired by the surviving

---

makes the ownership principles inapplicable to the question of tax liability under Section 241. *Commonwealth v. Nolan's Estate,* 345 Pa. 98, 26 A. 2d 308 (1941) ; *Cochrane's Estate,* 342 Pa. 108, 20 A. 2d 305 (1941).

[5] Act of July 31, 1970, P. L. 673, art. II, §202(3), 17 P.S. §211.202(3). Appellee neither entered an appearance nor filed a brief on this appeal.

[6] Act of June 15, 1961, P. L. 373, art. II, §241, 72 P.S. §2485-241.

joint tenant upon the death of the co-tenant is the right to the immediate ownership, possession and enjoyment of the whole property and *it is the accrual of this right which the statute properly taxes. . . . Even where one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same. . . .* Hence what one tenant acquires on the death of the other, where there are two joint tenants, as here, is the *right to the immediate possession, ownership and enjoyment of the entire* fund and not, as viewed by appellant, the contribution of the deceased joint tenant." Id. at 111, 20 A. 2d at 307 (emphasis added) ; accord *Commonwealth v. Nolan's Estate,* 345 Pa. 98, 100-01, 26 A. 2d 308, 310 (1942).

The Commonwealth having established the existence of these joint accounts with the right of survivorship, its claim to the tax could only be defeated by clear and convincing proof that the accounts were created as a result of fraud, accident or mistake.

We are unable to accept the trial court's conclusion that the accounts were opened as a result of "accident and mistake." Olson testified that he opened the joint accounts because "the clerk, cashier I did business with, said it's a matter of routine and that most accounts are written that way." However, Olson also testified that he was a diabetic in poor health, subject to onsets of shock requiring long periods of hospitalization. This testimony combined with the allegation in the executrix' petition[7] appealing the Commonwealth's assess-

---

[7] The petition of the executrix alleged in reference to both accounts: "That said signature card was executed by William H. Olson as a convenience for Paul H. Olson so that the funds from said account could be used for the benefit of Paul H. Olson in the event of his disability and that as between Paul H. Olson and William H. Olson, the funds in said account were considered the sole property of Paul H. Olson."

ment suggest that perhaps the real reason for the joint account may have been one of convenience. Olson's testimony that the cashier instructed him to open the joint accounts conflicts with the executrix' allegation in the petition and Olson's supporting testimony at the hearing that poor health created a need for the joint account on grounds of convenience.

The allegation in the executrix' petition and Olson's testimony is also difficult to reconcile with his claim that he was not aware that the joint account operated as a joint tenancy with the right of survivorship. Olson testified that "he was not explained" the meaning of the signature card and had not read the terms of the contract before signing it. Nevertheless, when asked, "If you read it would you have understood what it meant?" he replied, "I think so." This Court has repeatedly held that in the absence of proof of fraud, "failure to read is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof." *Orner v. T. W. Phillips Gas & Oil Co.*, 401 Pa. 195, 199, 163 A. 2d 880, 883 (1960) ; *T. W. Phillips Gas & Oil Co. v. Kline*, 368 Pa. 516, 518, 84 A. 2d 301, 302 (1951) ; see also *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A. 2d 448, 450 (1962). This record fails to provide clear and convincing proof of "accident and mistake" on the part of Paul H. Olson in opening these accounts.

In *Commonwealth v. Nolan's Estate*, supra, one Mary Nolan opened an individual savings account and many years later converted the account into a joint savings account making her sister Margaret Nolan a joint tenant. The evidence indicated that Mary Nolan contributed all the funds and added her sister as a joint tenant only because of her illnesses which often prevented Mary Nolan from making withdrawals and

deposits. We there sustained the inheritance tax[8] imposed on that joint account upon the death of Margaret and observed: *"Whatever may have been the original intention of the parties,* the fact remains that the joint tenancy agreement was fully explained to Margaret C. Nolan, at least *and that it was signed by both of the sisters, without any suggestion whatever of duress or fraud.* And, while it may be that Margaret C. Nolan made no withdrawals from the account for her own purposes, that fact is not inconsistent with her status as a joint tenant under the terms of the written agreement." Id. at 102, 26 A. 2d at 310 (emphasis added).

The only factual difference between this case and *Nolan's Estate* is that the record here does not indicate that the terms of the joint savings accounts were explained to the parties. This is of no consequence. Paul H. Olson specifically testified that if he had taken the time to read the contract, he would have understood its terms. Furthermore, failure to read the provisions of the joint savings accounts furnishes no basis for relieving the accounts of tax liability. Like *Nolan's Estate,* supra, there is no evidence of "duress or fraud". In both cases, the parties expressly created a joint tenancy with the right of survivorship. Upon the death of one party, the survivor enjoyed the accrual of the "right to the immediate ownership or possession and enjoyment of the whole property"[9] subjecting the accounts to the tax.

The decree is reversed and the record is remanded for the entry of an appropriate decree consistent with this opinion. Each party to pay own costs.

---

[8] The tax provision in question in *Nolan's Estate* was the practically identical predecessor of Section 241. See Act of 1929, P. L. 1795, §1, as amended, Act of 1936, First Ex. Sess., P. L. 44, §2, 72 P.S. §2301(e).

[9] Act of June 15, 1961, P. L. 373, Art. II, §241, 72 P.S. §2485-241 (emphasis added).