341 A.2d 471

**In re ESTATE of Howard L. GILLESPIE, Deceased.**

**In re ESTATE of Hazel M. WINGERTER, Deceased.**

**Appeal of the COMMONWEALTH of Pennsylvania.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1974.

Decided July 7, 1975.

Israel Packel, Atty. Gen., John M. Duff, Deputy Atty. Gen., Janet Moschetta, Asst. Atty. Gen., Harrisburg, for appellant.

J. A. Spaeder, Marsh, Spaeder, Baur, Spaeder & Schaaf, Erie, for appellee in No. 95.

David S. Gifford, Erie, for appellee in No. 96.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

These two appeals raise identical questions concerning the taxation of joint bank accounts under the Inheritance and Estate Tax Act of 1961 [the Act].[1] Section 241 of the Act imposes a tax on the interest passing to the surviving party or parties to a joint tenancy on the death of

[1] Act of June 15, 1961, P.L. 373, No. 207, § 101 et seq., 72 P.S. § 2485–101 et seq.

one of the joint tenants. In each of these cases (Nos. 95 and 96) the Commonwealth has appealed from a ruling that a so-called "convenience account", funded entirely by the surviving tenant, is not subject to the tax.

The facts in No. 95 are as follows. Anna Gillespie opened a joint account with her son, Howard Gillespie, on January 24, 1958 at the Security-Peoples Trust Company in Erie. Anna and Howard both signed a signature card containing the following provisions:

"The undersigned, joint depositors, hereby agree each with the other and with the bank, that all sums now on deposit or heretofore or hereafter deposited by either or both of said joint depositors with said bank to their credit as such joint depositors with all accumulations thereon, are and shall be owned by them jointly, with right of survivorship, and be subject to the order or receipt of either of them or the survivor of them and payment to or on the order of either or the survivor shall be valid and discharge said bank from liability. . . . Payment to or on order of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto. . . ."

Howard Gillespie died on August 30, 1972. On that date, the balance credited to the account was $13,197.90. The Commonwealth assessed a tax on half of his balance against Anna Gillespie as survivor. Anna promptly filed a protest with the Department of Revenue, averring that she had contributed all of the funds originally deposited in the joint account; that she had always retained the account passbook and paid all of the federal and state income taxes on the interest accruing to the account; that Howard had never made deposits in or withdrawals from the account; and that the account had been created so that Howard could manage his mother's affairs in the event of her illness or disability. The Department of Revenue denied the protest, whereupon Anna and How-

ard's estate filed a joint appeal to the Court of Common Pleas of Erie County, Orphans' Court Division.

After hearing, the court accepted Anna's factual averments and held that "the joint account . . . is not taxable due to the fact that the entire amount in said account . . . belonged to [Anna] and the joint account in fact was not a joint account but merely a convenience account."

The facts in No. 96 follow a similar pattern. Ethel I. Wingerter maintained an account with the same depository, the Security-Peoples Trust Company. On January 6, 1972, while Ethel was in the hospital, she and her sister, Hazel M. Wingerter, executed a signature card whereby the account was converted into a joint tenancy with right of survivorship. The card contained provisions substantially identical to the ones in the Gillespie case recited above.

■ Nine days later, on January 15, 1972, Hazel Wingerter died. At the time of her death the balance in the account was $24,144.26, all of which had been contributed by Ethel. The Commonwealth included the full value of the account in its Inheritance Tax Appraisement, [2] and Ethel appealed to the Orphans' Court Division.[3] After hearing, the court found that the account was established solely as a "convenience account", and declared it nontaxable.

2. The Commonwealth originally sought to tax the full value of the account on the theory that the account was created less than two years before Hazel's death, and hence was taxable as a gift in contemplation of death under § 222 of the Act, 72 P.S. § 2485-222. On appeal, the Commonwealth concedes that § 222 is inapplicable since Ethel, the surviving sister, was the sole contributor to the account.

3. See § 1001 of the Act, 72 P.S. § 2485-1001. The preliminary step of filing a protest with the Department of Revenue, although expressly authorized by this section, is not necessary to perfect the right of appeal to the Court of Common Pleas.

Section 241 of the Inheritance and Estate Tax Act provides in pertinent part:

"When any property is held in the names of two or more persons, or is deposited in a financial institution in the names of two or more persons, so that, upon the death of one of them, the survivor or survivors have a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right, upon the death of one of them, shall be deemed a transfer subject to tax under this act, of a fractional portion of such property to be determined by dividing the value of the whole property by the number of joint tenants in existence immediately preceding the death of the deceased joint tenant."

In *Cochrane's Estate*, 342 Pa. 108, 20 A.2d 305 (1941), we sustained the constitutionality of the statutory predecessor of § 241.[4]  We there observed:

"What is actually acquired by the surviving joint tenant is the right to the immediate ownership, possession and enjoyment of the whole property and it is the accrual of this right which the statute properly taxes. The interests of joint tenants are equal.  They own the half or part and the whole, per my et per tout.  There is a unity of interest, title, time and possession . . .. Even where one contributes the entire sum to a joint bank account, the rights of each of the tenants to the joint fund are the same, the one who made the contribution has by that act made an immediate gift to the other  . . .. Hence what one tenant acquires on the death of the other, where there are two joint tenants, as here, is the right to the immediate possession, ownership and enjoyment of the entire fund and not as viewed, by appellant, the contribution of the deceased joint tenant."  *Id.* at 111, 20 A.2d at 307 (citations omitted).

4.  Act of July 14, 1936, P.L. 44.

460

■■ In focusing on the underlying motives of the parties to the two joint accounts in the estates before us, the court below misapprehended the determinative issue in these cases. The question is not why the parties acted the way they did, but what sort of legal relationship they intended to create. The best evidence of their intent is the agreements they signed when they established their respective joint accounts. These agreements are legally binding contracts, and, like other contracts, if their terms are unambiguous they can be contradicted only by clear and convincing evidence of fraud, accident or mistake. *Olson Estate,* 447 Pa. 483, 487, 291 A.2d 95 (1972). Where a signature card clearly establishes an intent to create a relationship of joint ownership within the scope of § 241 of the Act, neither the source of the funds nor the fact that the relationship happens to suit the convenience of the parties has any bearing on the incidence of the tax.[5]

In *Olson Estate, supra,* two brothers, Paul and William, established two joint bank accounts with funds provided exclusively by Paul. The signature cards signed by the brothers expressly provided that they would own the accounts as joint tenants with right of survivorship. On William's death, the Commonwealth included the accounts in the appraisement of his estate, and assessed a tax on half their value. The estate contested the tax, and offered evidence that Paul who was in poor health, had set up the accounts so that William could look after his needs. Accepting this evidence at face value, we nonetheless sustained the imposition of the tax.

■ We see no basis for reaching a different result in the instant cases. The agreements establishing these joint accounts are unambiguous, and it is not contended that they were the product of fraud, accident or

5. If Anna Gillespie or Ethel Wingerter had wished to retain sole ownership of their respective accounts, it would have been a simple matter to execute powers of attorney in favor of those persons to whom it was desired to give access to the accounts.

mistake.[6] Under these circumstances, the tax cannot be avoided simply because the joint owners do not die in the anticipated order. It is perhaps unfortunate that Anna Gillespie and Ethel Wingerter will be taxed for regaining full ownership of property which was theirs alone before they established the joint accounts. But this does not change the fact that they are acquiring the same valuable legal rights in the property that the decedents would have acquired had the survivors been the first to die. *Commonwealth v. Nolan's Estate*, 345 Pa. 98, 26 A.2d 308 (1942); cf. *Davis Estate*, 56 Pa.D. & C.2d 63, 699, 21 Fiduc.Rep. 664, 670 (Montg. County 1971).

The decrees are reversed and the cases are remanded for the entry of appropriate decrees consistent with this opinion. Each party to bear own costs.

ROBERTS, J., filed a concurring opinion.

MANDERINO, J., filed a dissenting opinion, in which NIX, J., joined.

ROBERTS, Justice (concurring).

I agree that section 241 of the Inheritance and Estate Tax Act of 1961,* as interpreted by *Olson Estate*, 447 Pa.

---

**6.** Appellee Ethel Wingerter contends that she and her sister Hazel stood in a confidential relationship when they established their joint account, and the burden is thus shifted to the Commonwealth to show that Ethel's act was "free, voluntary and intelligent." See *Dzierski Estate*, 449 Pa. 285, 289, 296 A.2d 716 (1972); *Scott Estate*, 455 Pa. 429, 316 A.2d 883 (1974). We need not decide whether these and the other cases relied on by appellee have any application to inheritance and estate tax cases. There is here no suggestion that Ethel's signature was obtained by fraud, undue influence, or overreaching; in fact, it is conceded that Hazel was acting out of "a desire to be helpful" (Appellees brief at 4, 5). In these circumstances the existence *vel non* of a confidential relationship is irrelevant, even where the dispute is between the two parties to the transaction. *A fortiori,* it is difficult to see how the existence of such a relationship as between the two sisters in the case at bar could serve to place a burden of proof on a third party, such as the Commonwealth, who was unconnected with the transaction. Appellees' contention is thus beside the point, and need not be considered further.

* Act of June 15, 1961, P.L. 373, § 241, 72 P.S. § 2485–241 (1964).

483, 291 A.2d 95 (1972), requires the reversal of the decrees in these cases. Whatever may have been the effect as between the parties of proof of the absence of donative intent, it is clear that, as against the Commonwealth for inheritance tax purposes, section 241 makes the form in which the property is held determinative. See *Olson Estate*, supra, at 485 n. 4, 291 A.2d at 96 n. 4 ("liability for the Inheritance Tax [is not] to be resolved by the legal principles governing ownership of joint tenancy interests").

However, I am disturbed at the wide divergence of form and substance in these cases. The orphans' court found in both cases that the survivors did not intend to transfer any ownership interests to the decedents, but sought merely to empower the decedents to deal with the accounts for the benefit and convenience of the survivors. Since transfers made without donative intent are not completed gifts effective to transfer any interests in property, the clear implication of the orphans' court's findings is that the decedents owned no interests in the accounts as against the survivors. While this conclusion does not affect the incidence of taxation, it does raise a question why the transactions assumed forms that were so divergent from the parties' intentions.

I suspect that responsibility lies with the bank. Here the parties knew precisely what they wanted—to empower the decedents to transact business for the convenience of the survivors. Because people ordinarily do not consult attorneys when they open savings accounts, the only source of advice on how to structure their transactions is the bank or savings institution. The reason why the form the transactions took did not coincide with the definite intentions of the parties would seem to be that advice.

Mr. Justice Pomeroy perceptively observes that the survivors could easily have executed powers of attorney in favor of the decedents rather than printed signature

cards for joint accounts. I doubt whether they knew that this option was open to them. The likely source of that information would have been the bank. Apparently they were not so informed. In that the taxpayers have a legitimate complaint. There is no occasion in this case to consider whether they have any legal remedy.

MANDERINO, Justice (dissenting).

I dissent. The trial court, after reviewing all of the evidence, found that there was no intent on the part of the survivors to turn all or any part of said monies over to the decedents but that they only intended to establish convenience accounts to facilitate in the payment of bills. Moreover, the appellant conceded both at trial and at oral argument before this Court that these were, in fact, convenience accounts. Nonetheless, the majority blindly refuses to look beyond the four corners of the signature cards to ascertain the true intent of the parties.

While I agree with Mr. Justice Roberts that "the clear implication of the orphans' court's findings, is that the decedents owned no interests in the accounts as against the survivors," I disagree that "this conclusion does not affect the incidence of taxation." Section 241 of the Act of June 15, 1961, P.L. 373, 72 P.S. § 2485–241 (1964) defines a transfer subject to tax as the *accrual of the right* to the immediate ownership or possession and enjoyment of the whole property upon the death of one of the joint tenants. Since the survivors in the present cases never intended to transfer any ownership interests or rights to the decedents, they could not, upon the deaths of the decedents, have *accrued* a right which they had always possessed. Thus, there were no transfers in these cases upon which tax could properly be imposed.

NIX, J., joins in this dissenting opinion.