516 A.2d 829

In Re: Estate of Charles B. Munro. Commonwealth of Pennsylvania, Department of Revenue, Appellant.

Argued September 9, 1986, before Judges CRAIG and BARRY, and Senior Judge KALISH, sitting as a panel of three.

*Arthur F. McNulty,* Assistant Counsel, with him, *George T. Bell,* Chief Counsel, for appellant.

*William T. Fleming,* with him, *Gary A. Delafield, Delafield, Lisko & McGee,* for appellee.

OPINION BY JUDGE BARRY, October 22, 1986:

This appeal results from an order of the Centre County Court of Common Pleas which found not taxable certain assets of the deceased, Charles B. Munro. The appraisement by the Pennsylvania Department of Revenue (Department) had been challenged by the within appellee, Bertha V. Sampsel.

Munro died on October 18, 1983, and, within a year, an inheritance tax return for his estate was filed. That filing was amended by a supplemental return submitted shortly thereafter. The two documents listed as jointly held with one Bertha V. Sampsel (Sampsel),[1] three savings accounts: two conventional accounts in the

---

[1] Sampsel was Munro's aunt by marriage.

amounts of $2,695.65 and $16,855.19 and a certificate of deposit valued at $17,067.31.

The Department assessed the return and determined that the jointly held property was subject to inheritance tax. *See* Section 1708 of the Pennsylvania Inheritance and Estate Tax Act (Act),[2] 72 Pa. C. S. §1708. Sampsel appealed the appraisement, maintaining that the "accounts were established as a matter of convenience for decedent in handling Petitioner's [Sampsel's] financial affairs. Decedent had no beneficial interest in the . . . accounts." *Appeal of Appraisement,* Averment No. 6.

Proceedings then commenced in the trial court. Sampsel appeared and testified that the account monies were entirely her own, and that she had merely given Munro charge of the sums while she was sick and hospitalized. She repeatedly stated that "we didn't have no joint account," but did not deny that her signature appeared on the joint signature cards which established the accounts. The Department, meanwhile, presented no evidence, but rather relied upon the settled rule that "convenience accounts" are taxable in lieu of fraud, accident or mistake. *See Brief for Department* (Common Pleas Submission), at 6 (citing, *inter alia, Estate of Brant,* 463 Pa. 230, 344 A.2d 806 (1975)).

The trial court sustained the appeal, having believed Sampsel's testimony and concluding:

[T]his Court [holds] that there was clear and convincing evidence that Ms. Sampsel merely wished Mr. Munro to be a 'temporary trustee' of the assets sub judice. The creation of the instant jointly owned assets was clearly a mistake. Ac-

---

[2] Act of December 13, 1982, P.L. 1086, 72 Pa. C. S. §§1701-1796.

cordingly we [hold] that they are non-taxable pursuant to [72] Pa. C. S. Section 1711(h).

*Trial Court op.* at 2. The Department then initiated the present appeal.

Our scope of review in this case is limited to a determination of whether the trial court committed an abuse of discretion or an error of law. *Mid Valley Taxpayers Ass'n v. Mid Valley School District,* 52 Pa. Commonwealth Ct. 402, 407, 416 A.2d 590, 592 (1980). The Department maintains that the trial court erred as a matter of law in concluding that "mistake" was shown to an extent sufficient to negate joint ownership of the accounts and, hence, taxability thereof. We agree and thus reverse the trial court.

While the trial court correctly apprehended Sampsel's burden as establishing the existence of mistake, the only "mistake" shown by Sampsel in her testimony was her own failure to understand the import of her creation of the accounts with Munro. Such a failure, *viz.,* a lack of fulfillment of the *intent* of a party in establishing a joint account, however, is not the "mistake" required to have occurred in order to negate joint tenancy. In precisely this respect this court has recently explained:

> The best evidence of the parties' intent is the agreement they signed when they established their joint accounts and certificates of deposit. Estate of Gillespie, 462 Pa. 455, 341 A.2d 471 (1975). These agreements are contracts, and like any other contract, if their terms are unambiguous, they may not be contradicted by parol evidence in the absence of clear and convincing evidence of fraud, accident or mistake. *Id.*
>
> . . . .
>
> [T]he real mistake in the instant case . . . was the failure of appellant and/or decedent to read

the signature cards and certificates before signing them. A failure to read a card or certificate opening a joint tenancy is not a mistake sufficient to avoid imposition of the tax.

*Matter of Estate of Caldwell,* 88 Pa. Commonwealth Ct. 259, 262-63, 489 A.2d 955, 957 (1985) (citing, for the latter proposition, *Estate of Brant).*[3]

In the present case there is no assertion that the signature cards establishing the joint accounts were in any way deficient, and their signature by Sampsel is conceded. The only evidence is, as has been stated, that Sampsel was not aware of the full import of the specific modality by which she put Munro in control of her finances:

[Attorney for Sampsel]:

[If] I were to tell you that's your name on there, it's likely that that is, in fact, your name?

[Sampsel]:

Yes, but we didn't have no joint account.

. . .

[Attorney for Sampsel]:

What did you have?

[Sampsel]:

I just left him take care of it while I was in the hospital. I couldn't take care of it. I hadn't anybody. My people is all dead.

---

[3] In *Brant* Justice ROBERTS commented on the type of "mistake" required to negate a joint tenancy as follows:

Here . . . there was no accident or mistake in the *opening of the account.* Depositor *intended to sign the card* used to open the account. A careful reading of that card would have revealed the unhappy consequences. Neither a failure to read a card, *nor ignorance of the tax consequences of such an account upon the death of one of the joint tenants is an 'accident or mistake' sufficient to avoid the imposition of the tax.*

463 Pa. at 235, 344 A.2d at 809 (emphasis added).

*N.T.,* 4/2/85, at 8. As is most evident from *Caldwell,* however, such testimony will not support a negation of a joint account.[4] In short, a variance between the *intent* of a party in *de facto* creating a joint account, as deduced by later parol evidence, and the *reality* of the unhappy consequences of the tax laws upon such accounts, is simply not the "mistake" sufficient to avoid imposition of the tax, however credible the witness.

We note in conclusion that both *Caldwell* and *Estate of Brant,* our Supreme Court's most recent articulation of the rule reaffirmed in the present opinion, were decided under section 241 of the now-repealed Inheritance and Estate Tax of 1961.[5] That section was, however, the forerunner of section 1708 of the present Act, and the language of the latter section is identical to that of section 241. We thus conclude the cited cases to remain controlling precedent.

Reversed.

ORDER

NOW, October 22, 1986, the order of the Centre County Court of Common Pleas, No. 14-83-0321, dated May 21, 1985, is hereby reversed.

Senior Judge KALISH dissents.

---

[4] Indeed, in *Caldwell* any notion of "mistake" was rejected notwithstanding testimony (1) that the depositor instructed bank officials to set up "p.o.d." accounts; (2) that he retained possession of the passbooks; (3) that the decedent had never made any withdrawals from the accounts; and (4) that he had no knowledge of or dealings with the affairs of the decedent. 88 Pa. Commonwealth Ct. at 262-63, 489 A.2d at 957.

[5] Act of June 15, 1961, P.L. 373, 72 P.S. §§2485-101— 2490.15, repealed by the Act of December 13, 1982.