OPINION OF THE COURT
Charles T. Major, J.
Plaintiff, General Electric Capital Corporation (GECC), moves for summary judgment pursuant to CPLR 3212 on a breach of a finance lease contract claim against the defendant, National Tractor Trailer School, Inc. (NTTS). The matter is one of first impression under UCC article 2-A. NTTS asserts as affirmative defenses that GECC fails to state a cause of action; that NTTS rightfully rejected the goods that are the subject of the contract; that GECC failed to name additional necessary parties; and that NTTS is entitled to stay this action pursuant to Business Corporation Law § 1312 because GECC is allegedly not a corporation authorized to do business within the State of New York.
On or before June 30, 1995, NTTS was interested in leasing or purchasing a copier. In this regard, NTTS contacted Business Services Company of Utica, Inc. (BSC), a merchant dealing in copiers. BSC recommended a Canon model NP-6650E to meet NTTS’s copying needs of 40,000 to 50,000 two-colored cop *24 ies per month. On June 30, 1995, NTTS placed an order with BSC for a model NP-6650E with a staple sorter attachment and two CD units (the copier), and for a service agreement requiring BSC to service the copier and keep it in functioning order. BSC delivered the copier to NTTS on or about July 3, 1995.
On or about July 12, 1995, NTTS then entered a lease agreement (the Lease) with Mita Copystar America, Inc. (Mita) to finance the lease of the copier. Mita accepted and thereafter assigned the Lease to GECC. On July 13, 1995, a GECC employee contacted NTTS to find out if the copier was installed and operating properly. The employee spoke with William Mocarski (Mocarski), NTTS’s vice-president, who informed GECC that the copier was installed and working properly. Following this conversation, GECC paid BSC in full for the copier.
Between the date of delivery and April 17, 1996, the copier malfunctioned many times. NTTS alleges the copier commenced malfunctioning immediately upon delivery. NTTS further alleges that it immediately rejected the copier and requested it be returned and the lease rescinded. However, NTTS continued to make payments under the Lease until March of 1996. Between July 20, 1995, and March 20, 1996, BSC serviced the copier multiple times as the copier continually malfunctioned. Finally, on April 17, 1996, NTTS sent a letter to Mita/GECC stating that the copier was defective and requesting reimbursement for their expenses as a requirement for continued payments under the Lease.
The Lease provides that NTTS is in default if, inter alia, it fails to make the required monthly rent payments within 10 days of the due date. The Lease also provides that, in case of default by the lessee, all payments under the Lease may become immediately due and payable at the lessor’s discretion.
NTTS’s first affirmative defense is that GECC fails to state a cause of action on which relief can be granted. The court disagrees. On a motion to dismiss a complaint, the court accepts the facts alleged as true. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509 [1979].) The court must then simply determine "whether the facts alleged fit within any cognizable legal theory”. (Morone v Morone, 50 NY2d 481, 484 [1980] [citations omitted].) "If we find that the plaintiff is entitled to a recovery upon any reasonable view of the stated facts, our judicial inquiry is complete and we must declare the plaintiff’s complaint to be legally sufficient.” (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d, at 509.)
*25 Applying this standard, GECC has established a prima facie case for breach of contract. The complaint sets forth that the parties entered into an agreement for the lease of a copier on or about July 12, 1995, for which NTTS agreed to make 60 monthly payments of $480 a month. It further states that NTTS ceased making payments after the fifth payment, causing damages under the Lease equal to the remaining 55 payments. GECC’s claim therefore states a cause of action on which the court can grant relief. Accordingly, the court dismisses NTTS’s first affirmative defense.
For reasons discussed below under GECC’s motion for summary judgment, the court also dismisses NTTS’s second affirmative defense that it rejected the copier and the Lease.
NTTS’s third affirmative defense likewise lacks merit. NTTS asserts that GECC has failed to name additional necessary parties, but then it fails to identify why GECC should name any third party in this action for breach of contract. NTTS also fails to identify who the additional necessary parties are. NTTS does name BSC and Canon U.S.A., Inc. (Canon) as defendants in its third-party action, but neither Canon nor BSC is a party to the Lease. As discussed below, the court finds that the Lease is a "finance lease” as defined in article 2-A of the Uniform Commercial Code. (UCC 2-A-103 [g].) NTTS’s claims against BSC and Canon are therefore independent of GECC’s claim against NTTS and those parties are not necessary parties to this action. (CPLR 1001.)
Lastly, the court dismisses NTTS’s fourth affirmative defense. In this regard, NTTS alleges that GECC is not a corporation authorized to do business within the State of New York and that it therefore is entitled to stay this action pursuant to the Business Corporation Law. However, GECC has produced a copy of its certificate of incorporation as a banking organization under the Banking Law. The certificate is prima facie proof of the facts stated therein. (Banking Law § 1005.) GECC can therefore sue and be sued in all New York courts as a natural person. (Banking Law § 2001 [1] [a].) NTTS has produced no evidence to refute GECC’s status as a valid New York corporation. For purposes of this summary judgment motion NTTS’s fourth affirmative defense is therefore stricken.
In a motion for summary judgment, the nonmoving party is "entitled to the benefit of every favorable inference which may be drawn from the pleadings, affidavits and examinations before trial”. (Egan Real Estate v McGraw, 40 AD2d 299, 301 [4th Dept 1973].) "To grant summary judgment it must clearly *26 appear that no material and triable issue of fact is presented”. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957], citing Di Menna & Sons v City of New York, 301 NY 118 [1950].) The court will deny summary judgment if the opposing party produces evidentiary proof in admissible form sufficient to require a trial of any issue of fact. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) However, "mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient”. (Supra.) If material facts are in dispute or if different inferences may reasonably be drawn from undisputed facts, the court must deny summary judgment. (Gerard v Inglese, 11 AD2d 381, 382 [2d Dept 1960].)
Applying this standard to the memorandum and affidavits in support of and opposing GECC’s motion, this court grants summary judgment in favor of GECC for the reasons stated below.
New York’s version of article 2-A of the Uniform Commercial Code became effective June 30, 1995. (L 1994, ch 114, § 5; UCC 2-A-101.) It applies to any agreement reached on or after its effective date. (Ibid.) The Lease between GECC and NTTS is therefore subject to article 2-A.
GECC asserts that the Lease is a "finance lease”.* It then claims the protection of a finance lease which treats the lessor simply as a source of financing. (See, 2 White and Summers, *27 Uniform Commercial Code § 13-3 [Practitioner’s 4th ed 1995].) In a finance lease, the lessee negotiates directly with the supplier or manufacturer and then arranges for the lessor to buy the goods to lease them to the lessee. (Ibid.) The lessor is not really an ordinary buyer from the supplier or manufacturer, since it had no part in the selection of the goods. (Ibid.) The transaction between the lessor and the lessee is therefore first and last a financial transaction. (Ibid.) In such a situation it makes no sense to treat the lessor as a seller with warranty liability to the lessee, nor to free the supplier or manufacturer from the promises that it would have made in an outright sale to the lessee. (Ibid.)
Neither party alleges either that GECC selected the copier or that it manufactures or supplies copiers. NTTS, in fact, admits that it approached BSC to obtain the copier and selected it based on BSC’s recommendations. BSC in turn supplied a copier manufactured by Canon. Both parties likewise agree that GECC acquired the copier in connection with the Lease to NTTS. GECC would not otherwise have acquired the copier from BCS, nor did it already own or possess the copier before entering into the Lease. Subdivision (g) (i) and (ii) of UCC 2-A-103 are therefore satisfied.
Subdivision (g) (iii) (A) is also met because NTTS itself ordered the copier from BSC. Moreover, paragraph (6) of the Lease states ''[y]ou agree that you have received á copy of the purchase order for the equipment.” By signing the Lease NTTS acknowledged that it was aware of the contractual provisions incident to GECC purchasing the copier from BSC. The court therefore finds that the Lease is a finance lease as defined in UCC 2-A-103 (g).
Even if the Lease did not meet the UCC statutory definition of a finance lease, the parties can still achieve the same result by agreement. (UCC 2-A-103, Official Comment g; 2 White and Summers, op. cit.) The Code explicitly invites the parties to make their own law by agreement, encouraging the exercise of freedom of contract, (ibid.) Paragraphs (3) and (4) of the Lease explicitly disclaim all warranties and state that the Lease “is a 'finance lease’ as defined in article 2A of the uniform commercial code.” This is the equivalent effect of the statutory finance lease under article 2-A.
UCC 2-A-407 further provides:
*28 "(1) In the case of a finance lease that is not a consumer lease the lessee’s promises under the lease contract become irrevocable and independent upon the lessee’s acceptance of the goods.
"(2) A promise that has become irrevocable and independent under subsection (1):
"(a) is effective and enforceable between the parties, and by or against third parties including assignees of the parties; and "Ob) is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs.
"(3) This section does not affect the validity under any other law of a covenant in any lease contract making the lessee’s promises irrevocable and independent upon the lessee’s acceptance of the goods.”
This is the statutory "hell or high water” clause that makes a lessee’s obligations under a finance lease irrevocable upon acceptance of the goods, despite what happens to the goods afterwards. This statutory protection of the lessor’s rights supplements the specific language of the Lease itself, which requires NTTS to pay no matter what happens to the copier. Since this is not a consumer lease, NTTS’s obligations are irrevocable if NTTS accepted the copier. The court must therefore decide whether NTTS accepted the copier.
UCC 2-A-515 outlines the requirements for accepting goods. It states in part that:
"(1) Acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and
"(a) the lessee signifies or acts with respect to the goods in a manner that signifies to the lessor or the supplier that the goods are conforming or that the lessee will take or retain them in spite of their nonconformity; or
"(b) the lessee fails to make an effective rejection of the goods (Section 2-A-509 (2)).”
UCC 2-A-509 (2) further provides that "[Rejection of goods is ineffective unless it is within a reasonable time after tender or delivery of the goods and the lessee seasonably notifies the lessor.”
Although the Lease itself defines acceptance of the goods as occurring at delivery, and pursuant to UCC 1-102 (3), the parties may vary the effect of the provisions of the UCC by agreement, UCC 1-204 and its Official Comment 1 allow for voiding an agreement that fixes a manifestly unreasonable *29 time for completing a requirement under the Act. Acceptance at delivery does not provide a reasonable opportunity to inspect the goods as required by section 2-A-515 (1) and would therefore effectively eliminate any remedy under the Lease, since NTTS would be required to accept any goods delivered, despite condition. The court therefore holds acceptance did not occur at delivery. However, the private agreement of the parties is not necessary to decide whether there was an acceptance later.
As stated above, the Lease provision for acceptance on delivery is ineffective, therefore rejection had to occur within a "reasonable time”. (UCC 2-A-509 [2].) NTTS asserts that it immediately rejected the copier. However, it was in possession of the copier for approximately nine days before even entering into the finance lease with GECC. Further, on July 13, 1995, 10 days after delivery, Mocarski represented to GECC that BSC had installed the copier and it was operating properly. Moreover, there is no evidence of any service calls on the copier before July 20, 1995.
The best interpretations of these facts with respect to NTTS are, therefore, that (1) there was a conditional acceptance with awareness of a nonconformity under a reasonable assumption that BSC would cure the nonconformity (UCC 2-A-516 [2]); or (2) there was an immediate rejection. In either case, GECC is not liable as finance lessor and the Lease is still effective.
In the first case, if the copier was not functioning properly and NTTS accepted it with a nonconformity under the understanding that BSC would cure the nonconformity, the UCC bars NTTS from revoking acceptance with respect to the finance lease. (UCC 2-A-516 [2]; 2-A-517.) The only exception where revocation is effective even against a finance lease is where a lessee accepted goods "without discovery of the nonconformity if the lessee’s acceptance was reasonably induced * * * by the lessor’s assurances”. (UCC 2-A-517 [1] [b].) This is not so here, as NTTS does not allege any inducement by Mita or GECC, nor is there any evidence to that effect.
In the second case, if NTTS rightfully immediately rejected the copier, then under section 2-A-509 (2) rejection is ineffective unless the lessee seasonably notifies the lessor. The issue is then not whether there was a rejection within a reasonable time, but whether NTTS seasonably gave notice of rejection to GECC as required under UCC 2-A-509 (2). NTTS has produced no evidence of notice to GECC beyond an allegation that Mocarski phoned the "parties”. Almost all of NTTS’s allegations of notice are in fact against BSC. The only evidence of notice to *30 GECC is the April 17, 1996 letter to Mita. This took place nine months after delivery and is not a reasonable time for rejection. (Tabor v Logan, 114 AD2d 894 [2d Dept 1985] [purported rejection of goods by buyer eight months after delivery not timely as a matter of law].)
"Generally, what is a timely rejection is a question of fact for the jury * * * However * * * when only one inference may be drawn as to the reasonableness of the time in which defendant rejected the goods, it becomes a question of law”. (Supra [citations omitted]; S & H Bldg. Material Corp. v Riven, 176 AD2d 715, 717 [2d Dept 1991] [period of more than eight months between delivery and notice of rejection is unreasonable as matter of law].) Moreover, under section 2-A-515, NTTS accepted the goods with respect to GECC (i.e., no notice of rejection) by first telling GECC on July 13,1995, that the copier was working properly and then making lease payments until April of 1996. Based on NTTS’s actions, GECC had no way of knowing that NTTS had rejected the copier without NTTS informing them otherwise. The evidence is greatly weighted against NTTS’s contention that it "immediately” rejected the goods. On this record, no reasonable trier of fact could conclude that NTTS immediately rejected the goods with respect to GECC since they failed to provide seasonable notice.
NTTS further argues that because there is disagreement between the parties as to whether GECC has attempted to mitigate its damages, an issue of fact exists precluding summary judgment at this time. The court must again disagree. The terms of the Lease provide that GECC may, but is not required to, repossess and sell the copier. GECC only obligated itself to credit the proceeds of a sale to NTTS if it sold the copier, which the Lease does not require it to do. Furthermore, UCC 2-A-301 provides that "[e]xcept as otherwise provided in this Article, a lease contract is effective and enforceable according to its terms between the parties”. NTTS has not given the court any reasons under the UCC, or otherwise, why it should not enforce the Lease provisions and is therefore bound by its agreement. The court holds that GECC had no duty to mitigate its damages by repossessing and selling the copier.
Lastly, NTTS argues that justice requires this court delay in deciding GECC’s motion for summary judgment pending determination of NTTS’s claims against the third-party defendants and the repossession and sale of the copier. Whatever the liability of the third-party defendants to NTTS, they are not parties to the Lease. NTTS’s liability to GECC is indepen *31 dent of NTTS’s claims against the supplier and manufacturer, as UCC article 2-A and the Lease terms clearly delineate. This court has already held that GECC enjoys the protections of being a finance lessor and this protection includes the right to enforce the Lease regardless of the lessee’s disputes with the supplier or anyone else. Accordingly, justice does not require a delay in granting GECC’s summary judgment motion.
The court notes that this result is not inequitable. The reason for the finance lease release of liability for the lessor is that the lessor, in such a lease, is nothing more than a source of financing. The parties have entered what is essentially a financing transaction in which the lessor is lending money and dealing largely in paper, not goods. (2 White and Summers, op. cit., § 13-3 [c].) Moreover, under UCC 2-A-209, the lessee has a right of action against the supplier and the manufacturer. The lessee is therefore not without a remedy; he is simply without a warranty remedy against the lessor. NTTS therefore still has a cause of action against BSC and may prevail. Indeed, as in the typical finance lease situation, NTTS dealt almost exclusively with BSC. By virtue of the nature of its lease with GECC, however, it cannot prevail here.
This court therefore: (1) dismisses all of NTTS’s affirmative defenses against GECC; and (2) grants GECC’s motion for summary judgment in the amount of the requested damages and expenses, less the proceeds of any reasonable sale of the copier.

 UCC 2-A-103 (g) defines a "finance lease” as a lease with respect to which: "(i) the lessor does not select, manufacture, or supply the goods; (ii) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and (iii) one of the following occurs: (A) the lessee receives a copy of the contract by which the lessor acquired the goods or the right to possession and use of the goods before signing the lease contract; (B) the lessee’s approval of the contract by which the lessor acquired the goods or the right to possession and use of the goods is a condition to effectiveness of the lease contract; (C) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties, and any disclaimers of warranties, limitations or modifications of remedies, or liquidated damages, including those of any third party, such as the manufacturer of the goods, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods; or (D) if the lease is not a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee in writing (a) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person, (b) that the lessee is entitled under this Article to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor acquired the goods or the right to possession and use of the goods, and (c) that the lessee may communicate with the person supplying the goods to the lessor and receive *27 an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.”