**DE LAGE LANDEN FINANCIAL SERVICES, INC.,** Appellant

v.

**M.B. MANAGEMENT CO., INC. D/B/A Medina Village Apartments, Medina Associates D/B/A Medina Village Apartments,** Appellees.

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.

Filed Dec. 13, 2005.

Michael J. McCaney, Jr., Blue Bell, for appellant.

Charles J. Arena, Blue Bell, for appellee.

Before: LALLY–GREEN, BOWES and KELLY, JJ.

BOWES, J.

¶ 1 De Lage Landen Financial Services, Inc. ("DLL") appeals from the judgment entered in favor of Medina Village Associates d/b/a Medina Village Apartments ("Medina") following a nonjury trial in this action for breach of contract.[1] We vacate and remand for entry of judgment in favor of DLL.

¶ 2 The following facts were adduced at trial. Elaine Lewis, the office manager for M.B. Management Co., Inc., testified that in 1995, Medina purchased a copy machine from Copyrite, Inc. ("Copyrite"), an office equipment supply company. When the

---

**1.** The trial court granted a nonsuit as to defendant M.B. Management Co., Inc. at the conclusion of DLL's case-in-chief. DLL does not challenge the propriety of the nonsuit on appeal.

machine began to malfunction in 1998, Jay Greenless, a Copyrite employee, suggested that Medina acquire a new copier. Ms. Lewis discussed the matter with Mr. Greenless and informed him that Medina needed a copier with networking and stapling capabilities. Thereafter, on April 5, 1999, Mr. Greenless presented Ms. Lewis with a written lease agreement for a new digital copier manufactured by Sharp Electronics. The document provided in relevant part that: (1) Medina was leasing the copier from Sharp Electronics Credit Company ("Sharp"), a division of Tokai Financial Services, Inc., for a period of sixty months; (2) the lease was a finance lease as defined in Article 2A of the Uniform Commercial Code (the "UCC"); (3) Sharp made no warranty as to the copier's fitness for a particular purpose; (4) Medina's obligation to make monthly payments under the lease was "absolute and unconditional and ... not subject to cancellation, reduction, setoff or counterclaim;" and (5) the lease would be governed by Pennsylvania law. Lease agreement, 4/5/99, at 1. Ms. Lewis signed the lease agreement on behalf of Medina.[2]

¶ 3 Medina accepted delivery of the copier and made two lease payments totaling approximately $1000. When Medina subsequently discovered that the copier lacked networking capabilities, Medina stopped making payments, and Ms. Lewis unsuccessfully attempted to telephone Mr. Greenless about the problem. Copyrite refused to take any action. Thus, in June 1999, Medina placed the Sharp copier in storage and bought another copier from Core Business, Inc. Copyrite employees returned to Medina's offices and retrieved the Sharp copier roughly ten months later.

¶ 4 In the interim, DLL purchased Tokai Financial Services, Inc., and DLL employees began telephoning Ms. Lewis to inform her that Medina had defaulted on the lease agreement, which had been assigned to DLL. Ms. Lewis acknowledged that during those telephone conversations, she was told that DLL had acquired Sharp and the finance lease she signed on behalf of Medina. When Ms. Lewis advised DLL representatives that the copier did not satisfy Medina's use requirements, they responded that Medina was obligated to honor the lease regardless of the copier's capabilities. Medina made no further payments and referred the matter to its corporate attorney.

¶ 5 DLL instituted this action on September 19, 2000, seeking damages for breach of the lease agreement. The case proceeded to arbitration on January 28, 2002, whereupon the arbitrators found in favor of DLL and awarded damages in the amount of $40,893. Medina contested the award, and on June 5, 2003, a nonjury trial was held in the Chester County Court of Common Pleas. After hearing testimony from Ms. Lewis and Sandra Zibelman, a DLL employee who attested to the authenticity of various business records proffered by DLL in support of its claim, the court found that no contract existed based upon Ms. Lewis's testimony that she thought Sharp and Copyrite were the same entity when she signed the lease. Thus, the court concluded that there was no "meeting of the minds" among the parties. Trial Court Opinion, 10/7/04, at 3. Additionally, the court found that even if a contract was formed, it did not qualify as a finance lease under Article 2A of the UCC. DLL's mo-

---

**2.** Elaine Lewis is married to Robert Lewis, a partner in the entity that operates Medina Village Apartments. *See* N.T. Trial, 6/5/03, at 91. No one disputes that Ms. Lewis, who claimed to be employed by M.B. Management

Co., Inc., had authority or apparent authority to sign the lease agreement on behalf of Medina. In fact, Ms. Lewis admitted at trial that she never told Mr. Greenless she lacked authority to execute the contract. *Id.* at 100.

tion for post-trial relief was denied. This appeal followed, wherein DLL challenges the trial court's determinations.

¶ 6 In reviewing the outcome of a nonjury trial, we are limited to determining whether the trial court's factual findings are supported by competent evidence and whether the court properly applied the pertinent law. *Prestige Bank v. Investment Properties Group, Inc.*, 825 A.2d 698 (Pa.Super.2003). Those findings must be afforded the same weight and effect as a jury verdict and will not be disturbed on appeal absent an error of law or an abuse of discretion. *Id.* Furthermore, absent an abuse of discretion, the reviewing court is bound by the trial court's credibility determinations. *Viener v. Jacobs*, 834 A.2d 546 (Pa.Super.2003).

¶ 7 As noted, the trial court in the instant case determined that the parties never formed a contract. In so holding, the court reasoned as follows:

> The Court, in its ... verdict, found that [DLL] ... failed to prove that [Medina] was aware of the party with whom it was contracting. [DLL] insists that the Court erred in finding that the belief of the lessee was sufficient to contradict the plain language of the contract and in finding that the lessee was not aware of the entity with which it was contracting. The lease at issue in this case was purportedly entered into between Medina Apartments and Sharp Electronics. Ms. Lewis testified that she discussed the new copier with Mr. Greenlees [sic], who worked for Copyrite. Ms. Lewis testified that she signed the lease and then gave it to Mr. Greenlees [sic] thinking that he had to take it back to his office for his supervisor to sign. In reality, Mr. Greenlees [sic] forwarded the lease to [Sharp]. Ms. Lewis thought that Sharp Electronics and Copyrite were one [and] the same. [Medi-

na] never dealt with anyone from Tokai Financial, Sharp Electronics, or De Lage Landen. Ms. Lewis knew that the lease was between Medina Village Apartments and Sharp Electronics. However, she thought Sharp Electronics was the same [entity] as Copyrite. As the Court has explained, [Medina] did not know that it was contracting with [DLL]. The identity of the parties was neither clear nor definite. Indeed, Sharp Electronics is not even a separate entity, but is merely a name that Tokai used pursuant to an unrelated contract. Even if [Medina] knew that Sharp Electronics and Copyrite were separate entities, it had no way of knowing that Sharp Electronics and [DLL] were the same entity. Without knowing the identity of the other party, there can be no meeting of the minds and no enforceable contract.

Trial Court Opinion, 10/7/04, at 3 (footnote and citations to record omitted).

¶ 8 The record does not support this assessment. Contrary to the trial court's position, the lease agreement identified the parties to the transaction and the terms of the offer. For example, under the heading "Terms & Conditions," the document provided that Sharp Electronics Credit Company agreed to lease the copier to Medina for sixty months at a rate of $484.91 per month. Sharp made no warranties regarding the copier's fitness for a particular purpose, and Medina agreed to make monthly payments to Sharp regardless of the copier's performance. In addition, the agreement stated, "YOUR OBLIGATION TO PAY IN FULL ANY AMOUNT DUE UNDER THE LEASE WILL NOT BE AFFECTED BY ANY DISPUTE, CLAIM, COUNTERCLAIM, DEFENSE OR OTHER RIGHT WHICH YOU MAY HAVE OR ASSERT AGAINST THE SUPPLIER OR THE

EQUIPMENT MANUFACTURER." Lease agreement, 4/5/99, at ¶ 5.[3] The lease also provided that Sharp transferred to Medina "all warranties, if any, made by the manufacturer" and advised Medina that it could "contact the Supplier for a description of any rights or warranties that [Medina] may have under this supply contract." *Id.* at ¶ 5, 20. Accordingly, the lease indicated that: (1) Sharp Electronics Credit Company was neither the supplier nor the manufacturer of the copier; (2) Medina was unconditionally obligated to make sixty lease payments to Sharp Electronics Credit Company; and (3) Medina could contact the supplier, *i.e.,* Copyrite, for a description of any warranties or rights bestowed upon Medina by the contract.

■ ¶ 9 Ms. Lewis's mistaken belief that Sharp Electronics Credit Company and Copyrite were the same entity stemmed from the fact that she did not review the agreement thoroughly before signing it. Indeed, Ms. Lewis conceded on direct examination that she did not read the document carefully and therefore failed to realize that by signing the agreement, she was certifying that the copier was in "good working condition." N.T. Trial, 6/5/03, at 84. The trial court ignored this fact, concluding without basis that "[t]he identity of the parties was neither clear nor definite." Trial Court Opinion, 10/7/04, at 3. We disagree and find that the court committed an error of law in refusing to give effect to the express language of the contract, mindful of our Supreme

Court's oft-quoted pronouncement in *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (footnote omitted):

> Where ... the language of the contract is clear and unambiguous, a court is required to give effect to that language. *See Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co.,* 426 Pa. 453, 233 A.2d 548 (1967). "[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'" *Olson Estate,* 447 Pa. 483, 488, 291 A.2d 95, 98 (1972), quoting *Orner v. T.W. Phillips Gas & Oil Co.,* 401 Pa. 195, 199, 163 A.2d 880, 883 (1960). .

*Accord Simeone v. Simeone,* 525 Pa. 392, 400, 581 A.2d 162, 165 (1990) ("Contracting parties are normally bound by their agreements, without regard to whether the terms thereof were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains."). In the case at bar, Medina offered no evidence of fraud on the part of DLL, Tokai Financial, Sharp Electronics Credit Company, or Copyrite. Hence, the trial court should have enforced the contract against Medina.[4]

■ ¶ 10 Having found that the contract was not ambiguous, we now address the question of whether it constituted a finance lease under Pennsylvania's version of the Uniform Commercial Code. This

---

**3.** Although the name of the "supplier" is not specified in the contract, paragraph twenty of the agreement provides, "You [ (Medina) ] acknowledge that we [ (Sharp Electronics Credit Company) ] have given you the name of the Supplier of the Equipment."

**4.** We also reject the trial court's suggestion that the contract was invalid because "Sharp

Electronics is not even a separate entity, but is merely a name that Tokai used pursuant to an unrelated contract." Trial Court Opinion, 10/7/04, at 3. The fact that Tokai Financial was doing business under the fictitious name Sharp Electronics Credit Company is irrelevant, as is the fact that DLL subsequently purchased Tokai.

inquiry is critical because it will determine the nature of the transaction as well as the law applicable to the enforceability of the rights of the parties herein. Pursuant to 13 Pa.C.S. § 2A103(a), a finance lease is defined as an agreement in which:

(1) the lessor does. not select, manufacture or supply the goods;

(2) the lessor acquires the goods or the right to possession and use of the goods in connection with the lease; and

(3) one of the following occurs:

(i)· the lessee receives a copy of the contract by which the lessor acquired the goods ... before signing the lease contract;

(ii) the lessee's approval of the contract by which the lessor acquired the goods ... is a condition to effectiveness of the lease contract; ·

(iii) the lessee, before signing the lease contract, receives an accurate and complete statement designating the promises and warranties ... provided to the lessor by the person supplying the goods ...; or

(iv) if the lease ·is not· a consumer lease, the lessor, before the lessee signs the lease contract, informs the lessee, in writing:

(A) of the identity of the person supplying the goods to the lessor, unless the lessee has selected that person and directed the lessor to acquire the goods or the right to possession and use of the goods from that person;

(B) that the lessee is entitled under this division to the promises and warranties, including those of any third party, provided to the lessor by the person supplying the goods in connection with or as part of the contract by which the lessor ac- quired the goods or the right to possession and use of the goods; and

(C) that the lessee may communicate with person supplying the goods to the lessor and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

¶ 11 The trial court reasoned that the lease in question failed to qualify as a finance lease because DLL did not comply in full with section 2A103(a)(3)(iv)(A).[5] Specifically, the court observed that there was no evidence that Medina "directed the lessor to acquire the goods or the right to possession and use of the goods from th[e] person [supplying the goods to the lessor]." 13 Pa.C.S. § 2A103(a)(3)(iv)(A). Although the record supports this determination, we hold that Medina cannot deny the existence of a finance lease in this case because the contract provided that it constituted a finance lease "as that term is defined in Article 2A of the Uniform Commercial Code." Lease Agreement, 4/5/99, at ¶ 20.

¶ 12 The trial court overlooked the fact that section (g) of the Comment to 13 Pa.C.S. § 2A103 provides, "If a transaction does not qualify as a finance lease, the parties may achieve the same result by agreement; no negative implications are to be drawn if the transaction does not qualify." Although there is no Pennsylvania case law interpreting this provision, a New York trial court applied identical language in *General Electric Capital Corporation v. National Tractor Trailer School, Inc.*, 175 Misc.2d 20, 667 N.Y.S.2d 614 (1997). In that case, the lease at issue stated that it was a finance lease "as defined in Article 2A of the Uniform Commercial Code." *Id.*

**5.** None of the conditions listed in section 2A103(a)(3)(i)-(iii) occurred herein.

at 619. The trial court, citing section (g) of the Official Comment to the UCC, observed that "the Code explicitly invites the parties to make their own law by agreement, encouraging the exercise of freedom of contract." *Id.* Consistent with section (g), the court determined that the lease in question was "the equivalent of the statutory finance lease under article 2–A." *Id.*

¶ 13 Like the court in *General Electric Capital Corporation,* we find that the parties in the case *sub judice* are bound by the language contained in paragraph twenty of the lease agreement, wherein Medina agreed that the lease was a finance lease as defined in article 2A. As noted, the Comment to 13 Pa.C.S. § 2A103 expressly provides that the parties can agree that a transaction which otherwise would not qualify as a finance lease does in fact constitute such a lease.

¶ 14 By definition, the Uniform Commercial Code was designed to "simplify, clarify, and modernize the law governing commercial transactions." 13 Pa.C.S. § 1102(b)(1). It therefore "shall be liberally construed" to achieve that goal. 13 Pa.C.S. § 1102(a). One of the primary purposes of the UCC is to "permit the continued expansion of commercial practices through custom, usage and **agreement of the parties.**" 13 Pa.C.S. § 1102(b)(2) (emphasis added). In the present case, Ms. Lewis executed a written contract that expressly invoked article 2A of the Uniform Commercial Code and provided that the contract constituted a fi-

nance lease as defined by statute. In addition, Medina was contractually obligated to make payments to Sharp regardless of whether the copier satisfied Medina's use requirements. *See* Lease Agreement, 4/5/99, at ¶ 2 (Medina's obligation to make lease payments to Sharp was "absolute and unconditional"). Finally, Medina accepted delivery of the copier, made two payments under the lease, and then willfully defaulted on the agreement by refusing to make the remainder of the payments. Thus, based on the evidence of record, we conclude that the trial court erred as a matter of law in finding in favor of Medina.[6]

¶ 15 Judgment vacated. Case remanded for entry of judgment in favor of DLL. Jurisdiction relinquished.

---

**6.** The trial court found that it was unclear whether Sharp owned the copier at issue or had the right to lease it to Medina, concluding that Ms. Zibelman's testimony on this issue "lack[ed] credibility." Trial Court Opinion, 10/7/04, at 5. Similarly, the court found that Ms. Zibelman's testimony concerning the relationship between DLL and Copyrite lacked credibility. In so holding, the court improperly ignored business records establishing

that Copyrite sold the copier to a division of Tokai Financial three days after the lease herein was executed by Ms. Lewis. Moreover, Ms. Zibelman testified that those records, which were admitted into evidence, were created in the regular course of business at DLL. Hence, we find that the court's decision to ignore Ms. Zibelman's unrebutted testimony constituted an abuse of discretion.