OPINION
{¶ 1} Plaintiffs-appellants, DD RV and Auto, LLC ("DD"), and Darlene Clark, appeal a decision of the Preble County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Lyon Financial Services, Inc., dba U.S. Bancorp Manifest Funding *Page 2 
Services ("Lyon Financial"), in a breach of finance lease action.
 {¶ 2} Lyon Financial is an Ohio foreign corporation with its principal place of business in Marshall, Minnesota. DD is an Ohio Limited Liability Company with its principal place of business in West Alexandria, Ohio. Defendant Rainmaker Software, Inc. ("Rainmaker"), is a vendor of computer software and equipment. Darlene Clark is a member of DD.
 {¶ 3} Early March 2004, DD entered into a contract with Rainmaker with regard to certain computer software. To obtain the software, DD entered into a finance lease agreement with Pioneer Capital Corporation (the predecessor in interest of Lyon Financial). The lease agreement was signed by DD on March 23, by Pioneer on March 26, and provided for 36 monthly payments. Rainmaker delivered and installed the software on March 23, 2004. That same day, on behalf of DD, Darlene Clark signed a Delivery and Acceptance Certificate that stated that "delivery and installation of the equipment ha[d] been fully completed * * * and that it ha[d] been accepted by [DD] as satisfactory." On that same day, Darlene Clark and Johnnie Clark also personally guaranteed the payment and performance of the lease agreement. On March 26, 2004, Pioneer assigned all of its rights, title, and interest in the lease agreement to Lyon Financial.
 {¶ 4} Unfortunately for DD, soon after the software was installed, it became apparent that it did not provide DD with what it needed. Contracts for sales of vehicles could not be written, sales tax could not be computed, and the interest rate would not calculate beyond 30 days. The software would not compute APR or bank cost, credit life insurance and disability insurance could not be calculated, and customers could not be told what their monthly payments would be should they purchase a vehicle or RV unit. Nonetheless, while Rainmaker attempted to correct the problems, DD made nine out of the 36 monthly payments under the lease agreement. Then, on November 15, 2004, DD sent a letter to Rainmaker and Pioneer giving them notice that DD was rejecting the computer software. *Page 3 
 {¶ 5} Appellants subsequently filed a complaint against Rainmaker and Pioneer, alleging that Rainmaker had breached its contract as well as warranties, and that it had fraudulently induced DD to enter into the lease agreement. The complaint did not allege that Pioneer had breached the lease agreement or warranties. Lyon Financial, as the successor in interest to Pioneer, filed an answer and counterclaim against appellants and a third-party complaint against Johnnie Clark. Lyon Financial alleged that as a result of appellants' breach of the lease agreement and the Clarks' breach of their personal guaranties, it had incurred $24,784.31 in damages.
 {¶ 6} DD moved for default judgment against Rainmaker. The trial court granted the motion and terminated the contract between DD and Rainmaker, but withheld judgment as to the amount of damages suffered by DD. Subsequently, appellants and Lyon Financial each moved for summary judgment. On January 17, 2006, the trial court granted summary judgment in favor of Lyon Financial, stating:
 {¶ 7} "There is no genuine issue of material fact. DD and [Darlene] Clark did not reject the goods within a reasonable time after tender or delivery of the goods. DD clearly had the opportunity to put the product to its intended use, to test same, and to determine its capability to perform. DD failed to reject the goods within the reasonable time period. DD's failure to make lease payments is a default which entitles Lyon to damages and a judgment for same against DD and Darlene Clark (on her personal guarantee)." The trial court granted a $24,784.31 judgment in favor of Lyon Financial. This appeal follows.
 {¶ 8} In a single assignment of error[1], appellants argue that the trial court erred by granting summary judgment in favor of Lyon Financial. Appellants assert there are genuine *Page 4 
issues of material fact under R.C. Chapter 1310 as to whether DD (1) had a reasonable opportunity to inspect the software, (2) accepted the software, and/or (3) rejected the software within a reasonable time after the software was delivered and installed.
 {¶ 9} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v.Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Our standard of review on summary judgment is de novo. Jones v. Shelly Co. (1995),106 Ohio App.3d 440.
 {¶ 10} It is undisputed that the lease agreement between DD and Lyon Financial is a finance lease agreement under the Uniform Commercial Code, governed by R.C. Chapter 1310. In the case at bar, Lyon Financial is the lessor and DD is the lessee. A finance lease is considerably different from an ordinary lease in that it adds a third-party, the supplier or manufacturer of goods (here, Rainmaker). Info. Leasing Corp.v. GDR Investments, Inc., 152 Ohio App.3d 260, 2003-Ohio-1366, ¶ 10. "In effect, the finance lessee is relying upon the manufacturer to provide the promised goods and to stand by its promises and warranties; the [lessee] does not look to the lessor for these. The [lessor] is only a finance lessor, and deals largely in paper, rather than goods. * * * [T]he finance lessor makes * * * no implied warranty of merchantability and no implied warranty of fitness for a particular purpose." 2 White Summers, Uniform Commercial Code (4th Ed. 1995), 5, 10, Section 13-3.
 {¶ 11} A notorious feature of a finance lease is its typically noncancelable nature, which is specifically authorized by statute. R.C.1310.46(A) provides that in the case of a finance lease (that is not a consumer lease), once the lessee has accepted the goods, the lessee's promises under the finance lease become irrevocable and independent. R.C. *Page 5 1310.46(B)(2) further provides that once the lessee's promises become irrevocable and independent, the finance lease "is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom it runs."
 {¶ 12} R.C. 1310.46 is the statutory version of the commonly known "hell or high water" clause. Under the "hell or high water" clause, the lessee's obligations to the lessor under a finance lease become irrevocable upon acceptance of the goods, no matter what happens to the goods afterwards. Info. Leasing, 2003-Ohio-1366 at ¶ 13. "The lessee under the statute must pay the finance lessor, come hell or high water. * * * Put another way, the lessor as lender has no interest in how the lessee as debtor chooses to spend the money for goods. If the lessee should order [goods] which [are] unsuitable or defective, this is not the lessor's problem. The lessor's responsibility is merely to provide the money, not to instruct the lessee like a wayward child concerning a suitable purchase." White Summers at 10-11, Section 13-3.
 {¶ 13} Under R.C. 1310.61(A), acceptance of goods occurs only after the lessee has had a reasonable opportunity to inspect the goods and either (1) signifies acceptance, (2) fails to make an effective rejection of the goods under R.C. 1310.55(B), or (3) does any act that signifies acceptance. Under R.C. 1310.55(B), a "rejection of goods is ineffective unless it is within a reasonable time after the tender or delivery of the goods, and the lessee seasonably notifies the lessor." As these two statutory provisions clearly show, the concept of rejection is intertwined with acceptance; failure to make a proper rejection amounts to an acceptance.
 {¶ 14} "A reasonable opportunity to inspect is essential to a finding of acceptance[.]" 1 White Summers, Uniform Commercial Code (4th Ed. 1995), 534-535, Section 8-2. Thus, "the requirement that the lessee be given a reasonable time cannot be circumvented." Info. Leasing
at ¶ 17. Taking possession of the goods is not determinative of acceptance, nor is the making of a lease payment. Colonial Pacific Leasing Corp. v.J.W.C.J.R. Corp. (Utah *Page 6 
App. 1999), 977 P.2d 541, 545. Likewise, signing a delivery and acceptance certificate before the lessee has an opportunity to inspect and test the goods is not determinative of acceptance.Tri-Continental Leasing Corp. v. Law Office of Richard W. Burns
(Tex.App.1985), 710 S.W.2d 604, 608. See, also, Gen. Elec. Capital Corp.v. Natl. Tractor Trailer School, Inc. (1997), 175 Misc.2d 20,667 N.Y.S.2d 614 (acceptance at delivery does not provide a reasonable opportunity to inspect the goods). "A `reasonable time to inspect' under the UCC must allow an opportunity to put the product to its intended use, or for testing to verify its capability to perform as intended."Info. Leasing at ¶ 17, quoting Capitol Dodge Sales, Inc. v. N. ConcretePipe, Inc. (1983), 131 Mich.App. 149, 158, 346 N.W.2d 535.
 {¶ 15} Applying the foregoing standards and statutory provisions to the case at bar, we find that there are no genuine issues of material fact warranting a jury trial. The software was delivered and installed on March 23, 2004, the same day Darlene Clark signed the delivery and acceptance certificate. Soon after it was installed, it became clear that the software did not perform as intended. Yet, DD kept the software for several months and made nine monthly lease payments while Rainmaker was trying to make the software work. Only after Rainmaker failed to correct the software did DD attempt to reject the software by sending a letter to Pioneer and Rainmaker. The letter, dated November 15, 2004, is the only evidence of rejection notice to Lyon Financial. This took place almost nine months after delivery and is not a reasonable time for rejection. See Gen. Elec. Capital Corp. (purported rejection by lessee eight months after delivery is not reasonable time).
 {¶ 16} By waiting almost nine months before attempting to reject the software and by continuing to make lease payments for nine months, appellants failed to reject the software within a reasonable time after delivery and failed to seasonably notify Lyon Financial. As a result, appellants' rejection of the software was ineffective under R.C.1310.55(B). Appellants had no right to cease payments under the lease agreement despite their dissatisfaction with *Page 7 
the performance of the software. By virtue of the nature of their lease with Lyon Financial, appellants are without a remedy against Lyon Financial, and their payment obligation continues "come hell or high water."
 {¶ 17} We therefore find that the trial court did not err by granting summary judgment in favor of Lyon Financial. Appellants' assignment of error is overruled.
 {¶ 18} Judgment affirmed.
BRESSLER and WALSH, JJ., concur.
[1] We construe appellants' three issues as a single assignment of error. Appellants' first issue merely states the standard of review on appeal of a summary judgment decision. Their third issue simply argues that the matter should have been set for trial. Their second issue explains why the trial court erred by granting summary judgment in favor of Lyon Financial. *Page 1