OPINION OF THE COURT
Emily Pines, J.
Ordered that upon all the papers presented and oral argument being held before the court, the motion (motion sequence No. 001) by plaintiff for summary judgment is granted to the extent set forth below; and it is further ordered that a hearing on the amount of counsel fees is scheduled for June 1, 2009 at 9:30 a.m. before the undersigned.
This is an action by plaintiff seeking to recover under an equipment finance lease (the lease) entered into on or about August 14, 2006, between defendant, as lessee, and General Electric Capital Corporation (GE Capital). According to plaintiff’s affidavit, the lease was subsequently sold and assigned to plaintiff in or about December of 2006 pursuant to a master assignment agreement, and defendant was notified of the assignment by notice of assignment dated December 10, 2006. Pursuant to the terms of the lease, plaintiff financed defendant’s lease of certain equipment from nonparty Capital 4, Inc., at the rate of $1,303.57 per month for a period of 60 months at an interest rate of 10.6%. The lease specifically *914 provided that, “LESSOR MAKES ABSOLUTELY NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING NO WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE. Lessor is a funding source only.” The lease specifically provided that time was of the essence and defendant agreed to make all payments when due, regardless of any problems with the equipment. The lease further provided that in the event of a default under the lease, plaintiff was entitled to immediately take possession of the equipment and also to collect all costs of collection, including reasonable attorneys’ fees. By lease modification dated August 14, 2006, the monthly payment amount was amended to $1,796.66 at the same 10.6% interest rate.
In addition to the lease, defendant also executed a “Delivery and Acceptance Certificate,” wherein defendant acknowledged that lessor was not the manufacturer, distributor or supplier of the equipment and has no knowledge or familiarity with the condition, capacity, functionality or with any other characteristics of the equipment. Moreover, in the delivery and acceptance certificate, defendant acknowledged that this was a finance lease in accordance with Uniform Commercial Code article 2-A.
Plaintiff alleges that defendant defaulted under the terms of the lease in that it has failed to make the required monthly payments for September 14, 2007 and each month thereafter. Plaintiff has thus declared the lease in default and demanded the accelerated balance, plus late charges, in the total amount of $86,860.52. Additionally, based on the default, plaintiff also seeks immediate and permanent title and possession of the lease equipment, plus attorneys’ fees.
Plaintiff now moves for summary judgment on the ground that there are no genuine issues of fact and judgment should be granted as a matter of law. Plaintiff argues that there is no dispute that defendant entered into the lease and failed to make payments. Moreover, plaintiff asserts that the sole issue raised by defendant involves a third party over whom plaintiff has no control. Plaintiff argues that pursuant to the “hell or high water” provision of the lease, defendant was required to make all payments to plaintiff when due, regardless of any problems with the equipment or vendor. Plaintiff asserts that such provision is specifically authorized by UCC article 2-A and must be enforced by the court. Additionally, plaintiff asserts that defendant is barred by the lease from asserting any allegations against GE Capital, the original lessor. Moreover, plaintiff *915 argues, the lease provided a specific disclaimer wherein defendant acknowledged that “neither the Equipment vendor nor any broker is an agent of Lessor, nor are they authorized to waive or alter in any way the Lease terms. Their representations and acts in no way affect the Lessee’s rights and obligations set forth in this Lease.” Also, plaintiff asserts that the lease contained a one-year statute of limitations for any claims by defendant for misrepresentation, products liability, breach of warranty, default or any other claim, and defendant’s claims are thus time-barred.
Defendant opposes the motion on several grounds including challenging the validity of the lease, alleging fraud on the part of the equipment vendor, alleging that the terms of the lease constitute an unlawful penalty and the damages are disproportionate to the value of the equipment. Additionally, defendant claims a violation of Judiciary Law § 489, the prohibition against champerty. In opposition, defendant submits an affidavit from Hilary Becker, president of defendant corporation.
Initially, defendant argues that the subject lease is invalid because it was signed by a “former contractor”* of defendant, Marc Vorrasi, who did not have authority to enter into the lease. Becker states that at the time of the execution of the lease, Becker was the only person who had authority to enter into contracts on behalf of defendant. Additionally, defendant alleges that the equipment, to wit, a telephone service, had many problems and at times did not even function, but that the vendor, Capital 4, Inc., is out of business. Defendant alleges that it attempted to cancel the lease and return the equipment but was unable to do so. Moreover, defendant alleges that the lease was procured as a result of fraudulent activity by Capital 4, Inc. Defendant also asserts that the damages sought by plaintiff are grossly disproportionate to the value of the equipment and thus amount to an unlawful penalty and are unenforceable.
On the issue of champerty, defendant argues that plaintiff purchased the lease three months after defendant defaulted and, thus, there is a question of fact as to whether the purchase was for the sole purpose of bringing an action and violates Judiciary Law § 489. Therefore, defendant argues that the motion for summary judgment must be denied in its entirety.
In reply, plaintiff argues that since the execution of the lease, defendant made four payments to GE Capital and an additional *916 eight payments after the assignment to plaintiff in December of 2006. Plaintiff states that defendant never asserted that execution of the lease was unauthorized, despite letters from plaintiff and its counsel that defendant defaulted. Regardless, plaintiff asserts that defendant ratified the lease by acceptance of the equipment, and payments pursuant to the terms of the lease for a period of at least eight months.
With regard to defendant’s claim of fraud by Capital 4, Inc., plaintiff alleges that such defense is barred by both the “hell or high water” clause and the disclaimer contained within the lease. Additionally, plaintiff argues that the damages clause in the lease complies with the requirements of UCC article 2-A and is thus enforceable and, moreover, that plaintiff is entitled to attorneys’ fees. With regard to the defense of champerty, plaintiff argues that defendant cannot demonstrate that plaintiffs primary purpose in purchasing the lease was to bring an action because defendant made eight payments after the assignment, plaintiff issued a demand notice to defendant with an opportunity to cure, and plaintiffs attorney attempted to settle the dispute prior to commencement of the action. Plaintiff asserts that no further discovery is needed, that it has responded to all discovery defendant requested and, in fact, defendant has failed to respond to requests for admissions served by plaintiff. Thus, plaintiff urges the court to grant summary judgment in its favor.
The law is well settled that, to obtain summary judgment the moving party must make a prima facie showing of entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issues of fact. (Goldberger v Brick & Ballerstein, 217 AD2d 682 [2d Dept 1995].) The burden then shifts to the party opposing the motion to come forward with proof in admissible form demonstrating there are genuine issues of material fact which preclude the granting of summary judgment. (Zayas v Half Hollow Hills Cent. School Dist., 226 AD2d 713 [2d Dept 1996].)
In the case at bar, plaintiff has met its prima facie burden by the submission of the lease and an affidavit of nonpayment pursuant to the terms thereof. (Advanta Leasing Servs. v Laurel Way Spur Petroleum Corp., 11 AD3d 571 [2d Dept 2004].) In opposition, defendant has failed to raise a triable issue of fact warranting a trial. Addressing the defenses raised, the court finds, first, that even assuming arguendo *917 that the person who signed the lease on behalf of defendant lacked authority, defendant clearly ratified the lease by its actions. Where a party has accepted the benefits of an agreement and then seeks to repudiate the agreement, it must do so timely or its objection is waived (see e.g. Capstone Enters, of Port Chester v County of Westchester, 262 AD2d 343 [2d Dept 1999]; Banque Nationale de Paris v 1567 Broadway Ownership Assoc., 214 AD2d 359 [1st Dept 1995]). Acceptance and retention of the goods constitute ratification of the agreement between the parties. (Just In-Materials Designs v I.T.A.D. Assoc., 61 NY2d 882 [1984].) Here, defendant accepted the equipment and made payments on same for a period of eight months and did not raise the issue of the invalidity of the lease when notified of its default thereunder on at least two occasions. Therefore, defendant has failed to raise a triable issue of fact regarding the invalidity of the lease.
Additionally, defendant’s claims regarding the allegedly defective nature of the equipment and fraud by Capital 4, Inc., and/or plaintiffs predecessor in procuring the lease, are without merit under the clear and unambiguous terms of the lease and UCC 2-A-407. That section provides as follows:
“Irrevocable Promises: Finance Leases
“(1) In the case of a finance lease that is not a consumer lease the lessee’s promises under the lease contract become irrevocable and independent upon the lessee’s acceptance of the goods.
“(2) A promise that has become irrevocable and independent under subsection (1):
“(a) is effective and enforceable between the parties, and by or against third parties including assignees of the parties; and
“(b) is not subject to cancellation, termination, modification, repudiation, excuse, or substitution without the consent of the party to whom the promise runs.”
“This is the statutory ‘hell or high water’ clause that makes a lessee’s obligations under a finance lease irrevocable upon acceptance of the goods, despite what happens to the goods afterwards.” (General Elec. Capital Corp. v National Tractor Trailer School, 175 Misc 2d 20, 28 [Sup Ct, Onondaga County 1997].) This provision is in addition to the unambiguous terms of the lease wherein plaintiff expressly agreed to make all pay *918 ments under the lease when due, regardless of the condition of the equipment. Thus, defendant’s allegations regarding the allegedly defective nature of the equipment are -without merit and any claim is against Capital 4, Inc., and not a defense to this action. Additionally, the express terms of the lease stated that plaintiff made no warranties or representations regarding the equipment and defendant agreed to look solely to the vendor, Capital 4, Inc., for such warranties. Thus, defendant’s arguments regarding the condition of the equipment are to no avail (see Canon Fin. Servs. v Medico Stationery Serv., 300 AD2d 66 [1st Dept 2002].)
Finally, the court also rejects defendant’s defense of champerty pursuant to Judiciary Law § 489. That section prohibits the purchase or taking of an assignment in any matter “with the intent and for the purpose of bringing an action or proceeding thereon.” (Judiciary Law § 489 [1].) In Bluebird Partners v First Fid. Bank (94 NY2d 726 [2000]), the Court of Appeals set forth an instructive history on the champerty concept and explained that
“in order to constitute champertous conduct in the acquisition of rights that would then be nullified and to resolve the question at issue, the foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction. The words, ‘sole’ and ‘primary,’ are not synonymous generally or in law. A purpose that is the sole purpose is, by necessity, the primary purpose. However, a purpose that is primary is not necessarily the sole purpose. Yet, the distinction is one without a legal difference when the ‘primary’ element is present. The bottom line is that Judiciary Law § 489 requires that the acquisition be made with the intent and for the purpose (as contrasted to a purpose) of bringing an action or proceeding.” {Id. at 736 [citations omitted].)
Here, defendant has failed to demonstrate that champerty was the primary motivation in plaintiff’s acquisition of the subject finance lease. Rather, the submissions reflect that plaintiff purchased many leases from GE Capital and, moreover, defendant made at least eight payments to plaintiff prior to the commencement of this action. Finally, plaintiff gave defendant more than one opportunity to cure the default prior to commencing this action.
*919 Based on the foregoing, defendant has failed to rebut plaintiffs prima facie case of entitlement to summary judgment and the motion is granted.
Submission of judgment shall abide the determination on counsel fees.

 Although defense counsel calls Vorrasi a “former contractor,” Becker’s affidavit refers to him as a “former employee.”